(No. 6397.   November 30, 1936.)

WESTERN LOAN & BUILDING COMPANY, a Corporation; JOHN S. CONNELL and EARL THORNTON, Appellants, v. LILLIA M. BANDEL and C. A. BANDEL, Her Husband, Respondents.

[63 Pac. (2d) 159.]

102

F. L. Soule, for Appellants.

C. A. Bandel and O. R. Baum, for Respondents.

MORGAN, J.—Prior to and on December 24, 1926, appellant, Western Loan & Building Company, hereinafter called the company, was the owner, in fee simple, of a tract of land 25 feet wide and 135 feet long lying immediately adjacent to the west side of the south half of Block 4 in Mathias Addition to Rigby, being a part of a strip of land 25 feet wide lying along the west side of said addition which is neither included in the lots and blocks thereof nor dedicated to the public. That day the company entered into a contract with John S. Connell and Earl Thornton, who were therein referred to as ''co-partners doing business as Rigby Grocery Corporation,'' wherein it was agreed that the company should sell to them and they should purchase from it the property for $4,000. $55.20 was paid when the contract was entered into and additional payments of at least $55.20 were to be made monthly thereafter until the entire purchase price, together with interest thereon, should be paid in full. It was further agreed that, when the entire purchase price was paid, the company would execute and deliver to Connell and Thornton a deed conveying the property to them and they were to pay all taxes and assessments levied against it after 1926. The contract was not recorded.

November 6, 1928, the city council of Rigby, by unanimous vote, adopted a resolution declaring its intention to create local improvement district No. 2 for the purpose of improving Main Street of said city from the west side of Railroad Avenue to the east side of State Street. Thereafter such proceedings were had that an ordinance was enacted creating said improvement district, wherein it was provided: ''That the costs and expenses of the improvements mentioned in the

foregoing sections of this ordinance shall be taxed and assessed upon all the property in such Local Improvement District in proportion to the number of square feet of such lands and lots abutting, adjoining, contiguous and adjacent thereto, included in the Improvement District formed and in proportion to the benefits derived to such property by said improvements." The land above described abuts upon a part of Main Street proposed to be improved.

It was further provided in the ordinance that the committee on streets, together with the city engineer, should make an assessment roll, and: "That the said assessment roll shall contain, among other things, the number of the assessment, the names of the property owners affected by the proposed improvements if known, or if not known that the name is unknown, together with a description of each piece, lot, or parcel of land assessed and the total amount assessed against each piece, lot or parcel of land."

In the assessment roll made, or attempted to be made, pursuant to the ordinance the land herein involved was not described. The roll was made on a blank provided for that purpose which was so arranged that it should contain, among other things, the name of the owner of the property and the number of the lot or lots assessed and the block wherein located. In line 9, page 2 of the roll, under the caption "Name of Owner," appears "Rigby Grocery"; under the caption "Lots" appears "Tax #15," following which are ditto marks, referring to the top line of that column, in which is written "Lot #1 Rigby Orig," and under the caption "Block" appears "15."

The above entries, with the exception of the printed captions "Name of Owner," "Lots" and "Block" are written in ink, and a witness, who was city treasurer when the roll was made, testified he made it and wrote into line 9 the words and figures appearing therein in ink. In that line, under the caption "Lots," there has been written, with lead pencil, the words "Mathias Add," and under the caption "Block" has been written with lead pencil, over the 15, a figure 4. It was not shown when, by whom, or for what purpose these pencil entries were made.

The cost of the improvement was made payable in instalments, and the first instalment of the assessment sought to be levied against the property involved herein was not paid. July 15, 1930, a delinquency certificate was issued showing there was due and delinquent $20.45, together with 40 cents penalty and $1.00 delinquency certificate fee. A certified copy of the duplicate delinquency certificate, of record in the office of the city treasurer, was introduced in evidence by appellants. Therein the property is stated to be in Mathias Addition and it is described by metes and bounds, as follows: "Beg. at S W cor. of Lot 19, Block —— Mathias Addition, West 25 feet, North 135 ft. East 25 ft. So. 135 ft. to place of beginning." Respondents introduced in evidence the delinquency certificate, purchased by Mrs. Bandel from the city. It shows the property to be in Mathias Addition and describes it, by metes and bounds, as follows: "Beginning at S W Corner of Lot 19 Block 4 Mathias Addition, West 25 ft. North 135 ft. East 25 ft. So 135 ft. to place of beginning."

Redemption was not made and, July 21, 1932, the city treasurer issued a deed to Lillia M. Bandel wherein the property was stated to be situated in the City of Rigby, County of Jefferson, State of Idaho, and was correctly described, by metes and bounds, as follows:

"Commencing at the Southwest Corner of Lot 19 in Block 4 of the Mathias Addition of the City of Rigby, Idaho, as per the recorded plat thereof, now on file in the office of the county recorder of Jefferson County, Idaho, thence running West 25 feet; thence North 135 feet, thence East 25 feet, thence South 135 feet to the place of beginning."

At about the time the deed was issued respondent, C. A. Bandel, borrowed from Connell a key to the door of the building situated on the land, stating he wanted to inspect the property. After gaining entrance to the building with the key he placed a lock on the door, and he and his wife went into possession of the property and have since continued to occupy it.

The complaint states a cause of action to quiet title. Appellants prayed that respondents, and each of them, be re-

quired to set forth the nature of their claims, and that they be adjudged to have no title, estate or interest in the property; that the title to the company is good and valid, and that the rights of appellants be decreed as their interests may appear; for possession of the premises and for judgment, in favor of the company, for the reasonable rental value during the occupancy thereof by respondents.

Lillia M. Bandel answered that on July 21, 1932, she received a deed to the property and thereby became the owner of it, and that since August 6, 1932, she had been in peaceful possession thereof. A copy of her deed, being that acquired from the city treasurer, was attached to, and made a part of, her answer. She further alleged she had made expenditures, in making the purchase and in payment of taxes levied against and in improvement of the property, in the sum of $210.63.

C. A. Bandel in his answer admitted paragraphs 1 and 2 of the complaint, wherein was alleged the corporate existence of the company; that it had conformed to the laws of Idaho so as to entitle it to transact business in this state, and the marital relation of defendants, and denied all other material allegations in the complaint stated. He disclaimed any interest in the land and premises described in the complaint and alleged that any possession which he held thereof was by permission of his co-defendant, Lillia M. Bandel, and that said lands and premises were her sole and separate property.

Trial resulted in judgment that neither appellant has any right, title, interest or right of possession in or to the property herein involved, and that the complaint be dismissed; that Lillia M. Bandel is the owner thereof, free and clear of demands of appellants, or either of them, and that said premises, and the whole thereof, is her separate property. This appeal is from the judgment.

Appellants attack the deed and assert its invalidity on several grounds, among which is, in effect, that the description of the property, in the assessment-roll, is so erroneous and misleading as to render it, and the delinquency certificate and deed based on it, void.

Respondents rely on a document, introduced in evidence, entitled "City Clerk's List of Tax Numbers, Jefferson County," which contains what purports to be descriptions of fifteen pieces of property, separately, being numbers 1 to 15, inclusive. Those numbered 1 to 6, inclusive, appear under the heading "Block 16 Rigby Original" and those numbered 7 to 15, inclusive, appear under the heading "Block No. 15, Rigby Original." Following each description appears a book and page number, but no information is given as to what record is referred to or where it may be found. The description relied on as referring to the property here in controversy appears, as above indicated, under the heading "Block No. 15, Rigby Original," and is as follows: "Tax No. 15.

"Commencing at the southwest corner of Lot 19, Block 4, of the Mathias Addition as per the recorded plat thereof and running thence west 25 feet, thence north 135 feet, thence east 25 feet, thence south 135 feet to the place of beginning. Book 14, Page 269."

A witness, who was city clerk of Rigby from 1929 to 1933, testified with respect to the list of tax numbers as follows:

"Q. I hand you what has been marked Defendants' Exhibit No. 3 for identification, and ask you if you ever saw that before?

"A. I believe I did.

"Q. And you saw that in your office when you were City Clerk?

"A. I think so.

"Q. And a part of the records of the City Clerk of the City of Rigby, is that right?

"A. My memory isn't very clear on this.

"Q. You think you have seen that?

"A. Yes.

"Q. And among the records of the City Clerk of the City of Rigby?

"A. Yes."

Thereupon the exhibit was offered, objected to, and admitted.

The description, as it was written in the tax roll, is erroneous and misleading. As heretofore pointed out this tract of land is not in Block 4 of Mathias Addition, nor is it a part of Rigby Original Townsite.

Respondents rely, for authority for use in the assessment roll of the tax number shown in the above mentioned list, in lieu of an accurate description of the property, on I. C. A., sec. 49-2515. Their contention in this particular cannot be sustained for several reasons. The section provides that "the committee on streets, together with the city engineer, or other proper authorities of such municipality, shall make out an assessment roll according to the provisions of said ordinance which shall contain among other things the number of the assessment, the name of the owner if known, or if not known that the name is unknown, a description of each tract assessed and the total amount of the assessment." The exhibit was not properly identified as a record in the office of the city clerk. It does not appear who made the list, the purpose for which it was made, nor that the city council, or anyone else, authorized it. The list is misleading in that it erroneously describes the property as being located in "Block No. 15, Rigby Original," and it does not state where a correct description may be found. Furthermore, the statute is not satisfied by the substitution of a tax number for a description of the property. It requires that both be included in the assessment roll. The assessment roll was not made out according to the provisions of the ordinance, as required by statute, for the ordinance contains a provision, heretofore quoted, requiring that a description of each piece, lot or parcel of land assessed be contained therein.

Although the company had entered into a contract with Connell and Thornton to sell them this property, it still retained the legal title and they were in default in their payments when the tax deed was made. Apparently Connell and Thornton had procured the property to be assessed in the name Rigby Grocery, and it appeared in the assessment roll to be the owner thereof. It was not shown the company had knowledge the property was being assessed for street improvements, and there was nothing in the assessment

roll to give it notice that its rights were being jeopardized by the assessment, for it was neither named as the owner nor was its property described in the roll.

■ An assessment roll is a public record to which property owners are entitled to look for information as to whether their property has been assessed. Appellants, examining this roll for the purpose of securing the information it was required to give, would have been justified in believing the property involved herein had not been assessed.

■ This assessment roll is insufficient on which to base the delinquency certificate and deed. In *Wilson v. Jarron,* 23 Ida. 563, 568, 131 Pac. 12, 13, this court quoted with approval from *Miller v. Williams,* 135 Cal. 183, 67 Pac. 788, as follows:

"A description which would suffice in an agreement to convey or in a deed may be bad in an assessment. In the first case, the court might inquire as to the intention of the parties, but in the other the owner has no part in the proceeding, which is hostile, and to every step in which he is objecting. The assessment is made with a view to a possible sale, and the property should therefore be so described as to enable the owner to know what land is charged with the tax, and also to enable a possible purchaser to know what land is offered for sale. . . . . To decide this matter, there should be no uncertainty as to what land he is dealing with. Hence the description should be sufficient in itself to identify the land, or, if reference to a map or record is required, that should be indicated in the assessment." See, also, *Cahoon v. Seger,* 31 Ida. 101, 168 Pac. 441; *Dickerson v. Hansen,* 32 Ida. 18, 177 Pac. 760; *Little v. Burlingham,* 33 Ida. 757, 198 Pac. 464.

Respondents contend that I. C. A., secs. 49–2516, 49–2517, 49–2518 and 49–2520, make an attack on the assessment roll, other than by appeal from the confirmation thereof, unavailable.

Sec. 49–2516 provides for publication, by the clerk of the municipality, of notice in the official newspaper that the assessment roll is on file in his office, and said notice shall state the time at which the council will hear and consider

objections to the roll by parties aggrieved by the assessments. Provision is made in that section for the owners of property assessed, whether named in the roll or not, to file objections thereto. Sec. 49–2517 provides for a hearing to be had, by the council, of "all objections which have been filed by any party interested to the regularity of the proceedings in making such assessment, and the correctness of such assessment, or of the amount levied on any particular lot or parcel of land." Power is given to the council to revise, correct, confirm or set aside any assessment and to order that such assessment be made *de novo*. Sec. 49–2518 provides: "Any person who has filed objections to such assessment or reassessment as hereinbefore provided shall have the right to appeal to the district court of the county in which said municipality may be situated." That section specifies the manner in which the appeal shall be taken and requires, among other things, the filing of notice of appeal with the clerk of the municipality within five days after such assessment or reassessment roll shall have been confirmed by the council. Sec. 49–2520 is as follows: "No suit to set aside any assessment so made, or to enjoin the making of the same shall be brought, nor any defense to the validity thereof be allowed after the hearing before the city council, and confirmation of such assessment as provided in section 49–2517 except by appeal therefrom as herein provided."

To hold these statutory provisions effectual to preclude a property owner who has not been named in the assessment roll, whose property has not been therein described, and who has not been shown to have had knowledge, either actual or constructive, of the assessment proceeding would make them violative of art. 1, sec. 13 of the constitution which expressly prohibits depriving any person of property without due process of law.

Due process of law demands that the assessment roll to which the taxpayer may look for information, if it be made the basis of proceedings to deprive him of his property, must conform to the requirements of the statute which provides for the assessment and must name him, if his name is known, and if it is not known that fact must be stated; his property

must be described in order that he may be advised of the purpose of the municipality to assess it and, if necessary, to sell it to raise the amount of the assessment. These requirements do not relate to mere irregularities in the assessment proceedings, they are jurisdictional and, where they have not been conformed to, the statutes providing for an appeal within five days, and making that the only remedy, cannot be made to apply.

In *Mays v. District Court*, 34 Ida. 200, 207, 200 Pac. 115, 116, this court said: "Due process of law requires that one be heard before his rights are adjudged." In *Abrams v. Jones*, 35 Ida. 532, 546, 207 Pac. 724, 727, it was further said: "Due process of law is not necessarily satisfied by any process which the legislature may by law provide, but by such process only as safeguards and protects the fundamental, constitutional rights of the citizen." That doctrine applies to and protects all persons, whether natural or artificial; whether citizens or not. We reiterated it in *Johnson v. Diefendorf*, 56 Ida. 620, 57 Pac. (2d) 1068, 1072, and we find it to be applicable, and apply it, to this case.

Respondents assert, in their brief, that "estoppel to object to assessment applies where one with full knowledge of street improvement stands by without objection during progress of work."

Appellant, Connell, is shown to have had knowledge of the assessment and delinquency; he lived in Rigby and undoubtedly knew of the street improvement. This is not true of the company, the appellant most vitally interested in the outcome of the action. No knowledge on the part of, or notice to, any of its officers or agents was shown which could form the basis of estoppel against it, even if an owner whose property has not been assessed could be estopped to complain that he has been deprived of it by means of an attempted assessment wherein he was not named and it was not described, a question we do not find it necessary to decide.

Respondents did not plead estoppel and, therefore, that defense is not available to them. (*Leland v. Isenbeck*, 1 Ida. 469; *Seat v. Quarles*, 31 Ida. 212, 169 Pac. 1167;

*Neitzel v. Lawrence,* 40 Ida. 26, 231 Pac. 423; *Jackson v. Lee,* 47 Ida. 589, 277 Pac. 548.)

Respondents contend the complaint is insufficient in that it contains no allegation of the issuance of the tax deed, or of its invalidity. This contention is without merit. In *Coleman v. Jaggers,* 12 Ida. 125, 85 Pac. 894, 118 Am. St. 207, the syllabus, prepared by the court, contains the following:

"Under the provisions of section 4538 of the Revised Statutes (I. C. A., sec. 9–401) an action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim.

"Under the jurisdiction and practice in equity, independent of statute, a bill to quiet title cannot be maintained unless the possession and legal title are in the complainant, but that rule of equity practice has been greatly modified by the provisions of section 4538 in this state, and an action may be maintained although the plaintiff have neither the possession nor the legal title thereto.

"Under the provisions of said section 4538, a suit may be brought by anyone claiming some right or interest in land to determine any adverse claim thereto." (See, also, *Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784; *Wilson v. Linder,* 18 Ida. 438, 110 Pac. 274, 138 Am. St. 213; *Stewart Min. Co. v. Ontario Min. Co.,* 23 Ida. 724, 132 Pac. 787; *The Mode, Ltd., v. Myers,* 30 Ida. 159, 164 Pac. 91; *Pettengill v. Blackman,* 30 Ida. 241, 164 Pac. 358; *McMillan v. McMillan,* 42 Ida. 270, 245 Pac. 98.)

I. C. A., sec. 5–704, provides: "When the defense to an action is founded on a written instrument, and a copy thereof is contained in the answer, or is annexed thereto, the genuineness and due execution of such instrument are deemed admitted, unless the plaintiff file with the clerk, within ten days after receiving a copy of the answer, an affidavit denying the same, and serve a copy thereof on the defendant." No affidavit as provided for in that section was filed, and respondents insist appellants, by their failure to deny, have not only admitted the genuineness

and due execution of the deed, but are precluded from questioning the validity of the proceedings leading up to its issuance.

Failure to deny the genuineness and due execution of the deed did not admit title to the property therein described was either in the city or in the person who executed the instrument. Appellants were not thereby precluded from questioning its effect nor from asserting it did not convey title to the person named as grantee therein. (*Cox v. Northwestern Stage Co.*, 1 Ida. 376; *Martin v. Dowd*, 8 Ida. 453, 69 Pac. 276; *Austin v. Brown Brothers Co.*, 30 Ida. 167, 164 Pac. 95; *Pettengill v. Blackman*, 30 Ida. 241, 164 Pac. 358; *Krug v. Sinclaire*, 57 Cal. App. 563, 207 Pac. 696; *Interstate Realty & Improvement Co. v. Clark*, 77 Cal. App. 558, 247 Pac. 244.)

Respondents urge that recovery cannot be had, in a suit to quiet title, for rental value of premises title to which is sought to be quieted. That theory is erroneous. In *Coleman v. Jaggers*, 12 Ida. 125, 132, 85 Pac. 894, 897, 118 Am. St. 207, it is said:

"One of the objects of our practice act and the provisions of our state constitution in abolishing all distinctions between actions at law and suits in equity, and giving our district courts full and complete jurisdiction both at law and in equity, was to rid our system of a multiplicity of suits and a vexatious and cumbersome procedure, and to give litigants full and complete relief in a single action, where under the old practice several suits were necessary to accomplish that result." (See, also, *Van Winkle v. Van Winkle*, 56 Ida. 588, 57 Pac. (2d) 692.)

At the trial appellants offered to do equity by compensating respondents for expenditures made by them in whatever amount the court might find to be just. Appellants do not contend the property was not benefited by improvement of the street, nor that the amount attempted to be assessed against it was disproportionate to the benefits received. The amount expended by respondent, Lillia M. Bandel, for the delinquency certificate, the deed, recording fee, and in payment of taxes on and in improvement of the

property was established, as was also the rental value of the premises during the time it had been occupied by respondents. It is equitable and just that the amount of said payments so made by her be deducted from the sum found to be due from respondents to appellants as rental for use and occupancy of the premises.

The judgment is reversed and the cause remanded to the district court with instructions to hear further evidence and make further findings as to the length of time respondents have occupied the premises, the rental value thereof, and the amounts paid by Lillia M. Bandel for the delinquency certificate, the deed, recording fee, and as taxes on and improvement to the property, and to award judgment in appellants' favor, and against respondents, for the balance due as rental for the premises after deducting the amounts paid for the purposes above mentioned. Costs to appellants.

Givens, C. J., and Budge and Ailshie, JJ., concur.

Holden, J., sat at the hearing, after which, deeming himself to be disqualified, he did not participate in the decision.

Petition for rehearing denied.