# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45933

JEFFREY T. HARDY and JOHNNA A. )
HARDY, husband and wife, )
                )
       Plaintiffs-Counterdefendants- )
       Respondents, )
v. )
                )
RONALD O. PHELPS and DONNA J. )
PHELPS, husband and wife; RONALD O. )
PHELPS and DONNA J. PHELPS, )
TRUSTEES OF THE PHELPS FAMILY )
TRUST U/D/T/ SEPTEMBER 16, 2004; and )
DOES I-X as individuals with interest in real )
property located in Boise County, Idaho, )
legally described as Lots 26 and 27 of Mores )
Creek Heights, according to the plat thereof, )
recorded as Instrument No. 95549, records of )
Boise County, Idaho, )
                )
       Defendants-Counterclaimants- )
       Appellants. )
                )
_____ )
RONALD O. PHELPS and DONNA J. )
PHELPS, husband and wife; RONALD O. )
PHELPS and DONNA J. PHELPS, )
TRUSTEES OF THE PHELPS FAMILY )
TRUST U/D/T/ SEPTEMBER 16, 2004; and )
DOES I-X as individuals with interest in real )
property located in Boise County, Idaho, )
legally described as Lots 26 and 27 of Mores )
Creek Heights, according to the plat thereof, )
recorded as Instrument No. 95549, records of )
Boise County, Idaho, )
                )
       Cross Claimants-Appellants, )
v. )
                )
BOISE COUNTY, a political subdivision of )
the State of Idaho, and JOHN and JOHN )
DOE I through X, whose true identities are )
unknown, )
                )
       Cross Defendant-Respondent )

Boise, April 2019 Term

Opinion Filed: May 20, 2019

Karel A. Lehrman, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Boise County. Peter Barton, District Judge.

The order of the district court finding that Boise County's efforts to notify the Phelpses of the tax deed satisfied the notice provision of the statute and were sufficient to satisfy due process requirements is <u>affirmed</u>. Costs on appeal are <u>awarded</u> to Respondents.

Johnson & Monteleone, L.L.P., Boise, attorney for Appellants. D. Samuel Johnson argued.

Jones, Gledhill, Fuhrman, Gourley, P.A., Boise, attorneys for Counter-defendants and Respondents Hardy. Chad E. Bernards argued.

Borton-Lakey Law & Policy, Meridian, attorneys for Cross-defendants and Respondents Boise County. Joseph W. Borton argued.

_____

BEVAN, Justice.

## I. NATURE OF THE CASE

Jeffrey and Johnna Hardy ("the Hardys") purchased two properties at a tax sale and brought action to quiet title against the original owners, Ronald and Donna Phelps ("the Phelpses"). The Phelpses counterclaimed against the Hardys and cross-claimed against Boise County, alleging that Boise County failed to provide them proper notice of tax deficiency. Following a bench trial, the district court entered judgment quieting title to the properties in the Hardys and denying the Phelpses' counterclaim. The Phelpses appealed, asserting the lack of notice makes the Hardys' deeds void.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In the early 1980s, the Phelpses purchased seven parcels of property in Mores Creek Heights, a subdivision in Boise County. Two of those seven lots are at issue in this appeal ("Lot 26" and "Lot 27").

On October 1, 2004, the Phelpses recorded a quitclaim deed and trust transfer deed, transferring each of the seven lots into their trust. Each deed contained the statement "Mail Tax Statements to: Ronald O. Phelps, Donna J. Phelps, 1 Craftsbury Place, Ladera Ranch, CA 92694." The Phelpses moved to this address in 2005 and resided there at the time of the bench trial on November 16, 2017. The Phelpses signed for the receipt of certified mail sent to the Ladera Ranch address from Boise County as late as May 18, 2013, and again on December 7,

2

2015; however, the Phelpses' mailing address on file with Boise County beginning in 2009, and at all times relevant here, was P.O. Box 1047, El Toro, CA, 92630. Boise County mailed notices regarding property taxes on the lots to the Phelpses at the El Toro address beginning in 2009.

The Phelpses did not pay property taxes on the lots for 2010 or any year thereafter. On or about March 21 and March 24, 2014, Boise County ordered and obtained litigation guarantees from Alliance Title for each of the Phelpses' seven lots. The litigation guarantees listed the parties who have a publicly recorded interest in each property. The computer program used to produce the litigation guarantees searches all recorded documents held by every county in Idaho, also searching for nicknames, the names of spouses, maiden names of spouses, and possible misspellings of names. Alliance Title's March 2014 litigation guarantee for Lot 26 and Lot 27 listed P.O. Box 1047, El Toro, CA and 1 Craftsbury Place, Ladera Ranch, CA as the two addresses for the Phelpses.

On May 23, 2014, Boise County mailed multiple envelopes, each containing a "Notice of Pending Issue of Tax Deed" ("Pending Issue Letter") that identified the parcel, the names of the owners, the amount of delinquency, the date of hearing, and the date that a tax deed to Boise County would be issued if the delinquency was not cured. Copies of this Pending Issue Letter for each of the Phelpses' lots were sent by certified mail to P.O. Box 1047, El Toro, CA and to 1 Craftsbury Place, Ladera Ranch, CA. Boise County also mailed the Pending Issue Letter by ordinary mail to P.O. Box 1047, El Toro, CA 92630. The letters each stated:

> If said delinquency entry is not redeemed on or before July 22, 2014, by payment of said unpaid taxes together with late charges, interest, and all costs and expenses . . . I shall thereupon, as required by law, make application to the Board of County Commissioners of Boise County, State of Idaho, for a hearing to be held on July 23, 2014, at 10:00 AM, or as soon thereafter as said application can be heard, at 420 Main Street, Idaho City, ID for a Tax Deed conveying the above described property to said Boise County . . . .

After receiving no reply to the letters, on June 18, 2014, Boise County published the first of four consecutive weekly advertisements on the pending issuance of tax deeds for the Phelpses' lots, including Lot 26 and Lot 27, in the Idaho World newspaper (the newspaper of general circulation in Boise County). The summary of the advertisement included the names of Mr. and Ms. Phelps, the P.O. Box 1047, El Toro, CA address, and the legal description of each of their seven lots. The summary further stated that

3

the time of redemption of said property from said taxes expires on July 22, 2014, at 5:00 PM, and if not paid a tax deed will be issued to said County of Boise.

The final advertisement ran on July 9, 2014.

On June 20, 2014, Ms. Phelps emailed Boise County, requesting confirmation that the Phelpses were "for sure up to date on our taxes." On June 23, Boise County replied to Ms. Phelps' email stating, "[y]our taxes are delinquent an[d] you need to pay the 2010 taxes of $11,908.79 [b]efore July 23, 2014 to avoid a tax deed." The reply email does not mention the Pending Issue Letter or a specific hearing. Ms. Phelps verified by affidavit that she received this email but testified that she took the email to mean she would get a more formal notice after July 23, 2014.

On July 2, 2014, one of the envelopes containing the Pending Issue Letter sent to the Phelpses at 1 Craftsbury Place, Ladera Ranch, CA was returned as unclaimed to Boise County. On July 16, 2014, affidavits of compliance for the tax deed process for Lot 26 and Lot 27 were recorded. The Boise County Commissioners ("the Board") held a public hearing and granted a motion to approve the properties on the tax deed listing. The Board issued its Findings of Fact and Conclusions of Law for Lot 26 and Lot 27 on July 22, 2014. The Board found:

> On May 16th [sic], 2014, [Boise County] caused to be served a copy of the Notice of Pending Issue of Tax Deed by certified, registered mail, return receipt demanded, upon the record owner, at their last known address, for the above referenced property; which was no more than five (5) months and no less than two (2) months prior to the time set for the tax deed to issue.

Also on July 22, 2014, the Board signed the tax deeds for Lot 26 and Lot 27. The tax deeds were recorded on July 24, 2014.

On July 28, 2014, Boise County received two more unclaimed envelopes that they had sent by certified mail to the Phelpses at 1 Craftsbury Place, Ladera Ranch, CA and to P.O. Box 1047, El Toro, CA.

Over a year later, on September 15, 2015, Boise County auctioned and sold all seven of the Phelpses' lots. The Hardys purchased Lot 26 and Lot 27 at the auction. The Phelpses took no action to pay their taxes, to contest the tax sale, or to redeem their lots prior to the auction.

On September 22, 2015, Boise County granted the Hardys quitclaim deeds for Lot 26 and Lot 27. The original quitclaim deeds contained a spelling error, so the deeds were corrected and re-recorded on September 30, 2015. The Hardys have paid the property taxes on Lot 26 and Lot 27 every year since they purchased them.

4

On November 24, 2015, Boise County sent an excess funds letter by certified mail to the Phelpses at 1 Craftsbury Place, Ladera Ranch, CA 92694. On December 7, 2015, Ms. Phelps signed for the letter. On February 8, 2016, Boise County received a letter from the Phelpses requesting payment for the excess proceeds from the tax sale. The letter requested that the payment be sent to a new address, P.O. Box 3779, Mission Viejo, CA 92690, even though the Phelpses maintained this had been their address for "the last 10 plus years." The March 2014 litigation guarantees did not include the Mission Viejo address for the Phelpses.

After Boise County issued quitclaim deeds to the Hardys, the Hardys began making improvements to Lot 26 and Lot 27, which included survey work, excavation, permitting, and the building of a foundation. At the bench trial, the Hardys provided invoices showing they began the work on the lots in July 2016.

On October 19, 2016, the Hardys filed a verified complaint for declaratory relief. The complaint sought to quiet title on Lot 26 and Lot 27 and alleged that Boise County had properly taken title to the lots from the Phelpses by tax deed and then properly quitclaimed the lots to the Hardys. The Phelpses answered the complaint, filed a counterclaim, and filed a cross-claim against Boise County on December 21, 2016. The Phelpses alleged that the tax deeds had

> no lawful effect and were unlawfully issued, without proper notice to [the Phelpses] of any alleged tax delinquency, and in violation of [the Phelpses] right to due process guaranteed under the Fourteenth Amendment to the U.S. Constitution and the Idaho Constitution, Article 1, § 13.

Later, the Hardys filed an amended complaint which added an alternative claim of unjust enrichment. This claim would allow the Hardys to seek equitable damages for the improvements the Hardys made to Lot 26 and Lot 27 if the trial court found that the tax deeds were improper. Shortly thereafter, both Boise County and the Phelpses filed motions for summary judgment. The Hardys filed a partial joinder with Boise County's motion a few days later.

On November 9, 2017, the district court denied the competing motions for summary judgment, finding that "[e]ither party could prevail at trial." That same day, all parties entered into a joint stipulation for trial, which provided that the district court was to consider "whether the Phelps' [sic] were provided with lawful and constitutionally sufficient notice of the tax deed process." It was agreed that the trial court would only address damages if concluded that the Phelpses were not provided with adequate notice.

5

Based on the stipulation, the parties appeared for the bench trial and the court heard testimony from Ms. Phelps, Mr. Hardy, and Daniel Derby with Alliance Title. The district court then issued its Findings of Fact and Conclusions of Law. It concluded that despite times when Idaho Code section 63-1005 was not strictly complied with, Boise County's minor errors did not affect the Phelpses' substantive rights and that the errors were "mere irregularities in the . . . proceedings."

Shortly thereafter the district court entered its judgment and decree quieting title to Lot 26 and Lot 27 in favor of the Hardys and stating that the Hardys' unjust enrichment claim was moot. The Phelpses timely filed their notice of appeal.

### III. ISSUES ON APPEAL

1. Did the district court err in its interpretation of Idaho Code section 63-1005's notice requirement?

2. Did the district court err in determining that Boise County provided the notice required by Idaho Code 63-1005 and due process?

3. Are the Hardys or Boise County entitled to an award of attorney fees on appeal?

### IV. STANDARD OF REVIEW

"The standard of review of the lower court's determination on issues of statutory interpretation is one of free review." *Big Sky Paramedics, LLC v. Sagle Fire Dist.*, 140 Idaho 435, 436, 95 P.3d 53, 54 (2004).

Due process issues are generally questions of law over which this Court exercises free review. *Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 127, 176 P.3d 126, 132 (2007).

### V. ANALYSIS

**A. The district court correctly interpreted Idaho Code section 63-1005's notice provision.**

Idaho Code section 63-1005(1) states that when there is a tax delinquency, the county tax collector of the county where the real property is situated may issue a tax deed for such property. I.C. § 63-1005(1). The statute further states that "the county shall not be entitled to a tax deed for such real property until . . . a notice of pending issuance of tax deed has been given. . . ." I.C. § 63-1005(1)(a). The statute continues by dictating how notice must be given:

> The county tax collector of the county wherein the real property for which a tax deed may issue shall serve or cause to be served written notice of pending

6

issue of tax deed upon the record owner or owners and parties in interest of record in the following exclusive manner:

> (a) By serving or causing to be served a copy of such notice by certified mail with return receipt demanded upon the record owner or owners and parties in interest of record at their last known address, such service of notice to be made no more than five (5) months nor less than two (2) months before the time set for the tax deed to issue;

> (b) In the event that such notice is served as above described and returned undelivered after attempting to locate and serve the record owner or owners and parties in interest of record, by publishing a summary of such notice in a newspaper having general circulation in the county wherein the real property is situated. Such publication must be made at least once a week for four (4) consecutive weeks, the last publication of which is to be no more than two (2) months nor less than fourteen (14) days before the time set for the tax deed to issue.

I.C. § 63-1005(2).

Idaho Code section 63-1005(6) provides that actual notice is sufficient to satisfy the notice requirements of the statute:

> "If a record owner or owners or a party in interest shall have actual notice of the notice of pending issue of tax deed or that issuance of a tax deed is pending, it shall be deemed sufficient notice under this section."

I.C. § 63-1005(6).

The Phelpses allege that the district court misconstrued the notice provisions set forth in Idaho Code section 63-1005. Specifically, the Phelpses argue that the language in the statute creates a "temporal element," which would require Boise County to proceed only by "attempting to locate and serve" notice to a record property owner *after* service by certified mail fails, but before the tax collector may resort to service by publication. In other words, Phelpses suggest that the statutory onus of "attempting to locate and serve" the record owner would not arise until service by certified mail at the property owners' last known address has failed and mail has been returned undelivered.

The County, as a matter of course, ordered litigation guarantees before the statute requires that level of effort to be made, then mailed the Pending Issue Letters to all likely addresses. The Phelpses argue that the County, under the statute, should have been required to employ "new or different means to locate the record owners, when service at their last known

7

address returns undelivered." They concede that this does not mean Boise County was required to do again "what failed in the first instance," but argue that Boise County should have chosen a different method to locate the Phelpses once the Pending Issue Letters were returned.

When the language of a statute is plain and unambiguous, the Court gives effect to the statute as it is written, without resorting to statutory construction. *In re Estate of Peterson*, 157 Idaho 827, 830, 340 P.3d 1143, 1146 (2014). Only when the statute is ambiguous will this Court look to the rules of construction for guidance in considering the reasonableness of the conflicting interpretations. *Id.* Ambiguity occurs where the language in the statute is capable of more than one reasonable interpretation; however, ambiguity is not established just because the parties present differing interpretations to the Court. *State v. Yzaguirre*, 144 Idaho 471, 476, 163 P.3d 1183, 1188 (2007).

While the statute could be read to impose a temporal requirement, as the Phelpses propose, we hold that it is more reasonable to interpret the statute to require only that a sufficient attempt to locate be made before service by publication is undertaken. We reach this conclusion for two reasons. First, if the alternative reading were adopted, it would require a duplication of effort by Boise County each time a certified letter is returned. We decline to find that Boise County violated section 63-1005(2)(b) simply because it ordered the litigation guarantees earlier than was necessary.

Second, a temporal requirement is not the interpretation of the statute that the legislature intended, as evidenced by a change to the statute in 1996. Before 1996, the statute read:

> In the event that such notice is served as above described and returned undelivered and after *reasonable and diligent search and inquiry* in attempting to locate and serve the record owner or owners and parties in interest of record, by publishing a summary of such notice in a newspaper having general circulation in the county wherein the property is situated.

I.C. § 63-1126B(b) (repealed effective Jan. 1, 1996) (emphasis added). This section was replaced by section 63-1005(2)(b) in 1996. It currently contains no such temporal limitation and it is not within this Court's purview to add a temporal limitation that the legislature specifically removed. Rather, we give effect to the legislative expression shown by the removal of the old language. In the Revenue and Taxation Committee's Statement of Purpose about the change, the committee claimed the amendment to the statute "would [have] an economic benefit and potential cost savings to the counties by improving the efficiency of property tax administration." Statement of

8

Purpose, RS 05760C1, H.B. 783. For these reasons, this change signals the legislature's intention to remove an explicitly temporal element from the notice provision and as a result, increase efficiency by not requiring a duplication of efforts.

We hold there is no temporal element in the statute as it is currently written. The district court was correct in accepting Boise County's position that it would be wasteful and duplicative for Boise County to repeat the cost and effort represented by the litigation guarantees or to publish notice again every time a certified notice is returned.

**B.    The district court correctly determined that Boise County conducted reasonable attempts to locate the Phelpses.**

The Phelpses argue that even if Boise County complied with the statute as written, the County still breached their right to due process and the notice requirements in Idaho Code section 63-1005(4)(f) ("Such notice and summary thereof must contain . . . [t]he time, date, place at which, and by whom the tax deed will issue."). They maintain that the facts found by the district court show that Boise County violated the Phelpses' fundamental right to due process, which constitutes "clear grounds for reversal."

The Phelpses claim that had Boise County conducted a search after the notices came back undelivered, it would have discovered an obvious lead in its county records: Ms. Phelps email address. In the Phelpses' brief, Ms. Phelps alleges that in October 2012, she telephoned Boise County to inform them of her change of address from 1 Craftsbury Place in Ladera Ranch to P.O. Box 3779 in Mission Viejo[1]. Ms. Phelps states that after this phone call, Boise County emailed her instructions on how to complete a change of address, which included filling out a form and mailing it to the Boise County Treasurer. Ms. Phelps maintains that she faxed the completed form to Boise County. Even so, the crux of the Phelpses' argument here is that Boise County had, in its records, Ms. Phelps' email address but did not try to use it to serve the Phelpses the Pending Issue Letter. The Phelpses argue that these cumulative errors created a fatal defect to the overall process of serving notice to the Phelpses.

Due process requires that in any proceeding by which a person can be deprived of property, there must be notice reasonably calculated, under all the circumstances, to apprise interested parties of the opportunity to object. *Giacobbi v. Hall*, 109 Idaho 293, 296, 707 P.2d

---

[1] While Ms. Phelps insists she spoke with someone at Boise County regarding a change of address in her briefing, it was not mentioned during her trial testimony. This "change of address" was only discussed by Ms. Phelps' attorney in closing argument at trial, but is otherwise absent from the record.

404, 407 (1985). Idaho courts have held that a defect is fatal to a tax deed when the defect in following the notice requirements has affected the property owner's substantive rights, like the right to due process. *See Salladay v. Bowen*, 161 Idaho 563, 567, 388 P.3d 577, 581 (2017); *see also Sines v.* Blaser, 100 Idaho 50, 52, 592 P.2d 1367, 1369 (1979) ("The giving of such notice is mandatory and the lack of it a fatal defect."). Even so, "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–14 (1950).

In *Jones v. Flowers*, the United States Supreme Court held that when a mailed notice of a tax sale is returned unclaimed, a government agency must take additional reasonable steps to attempt to provide notice to the property owner before selling the property, so long as it is practicable to do so. 547 U.S. 220, 225 (2006). In that case, after the property owner became delinquent in the payment of his property taxes, a certified letter was sent to his address informing him that the property would be sold two years later to pay the delinquent taxes. *Id.* at 223. Nobody was home to sign for the letter and nobody retrieved it from the post-office, so it was returned to the Commissioner of State Lands "unclaimed." *Id.* at 224. Two years later, and after notice was published in the newspaper without response, the Commissioner received a private purchase offer. *Id.* The Commissioner then sent another certified letter to the owner's last known address which also came back unclaimed. *Id.*

The Court held that under the circumstances, it would have been practicable for the State to take additional reasonable steps, though the notice required would "vary with [the] circumstances and conditions [in each case]." *Id.* at 224 (internal quotation and citation omitted). The Court pondered specifically whether due process entails more responsibility when the government becomes aware, prior to the taking, that its attempt at notice has failed and whether that knowledge creates a "circumstance and condition" that varies the "notice required." *Id.* at 227. The Court held that other reasonable measures should have been taken to provide notice to the property owner—such as posting notice on the front door, addressing otherwise undeliverable certified mail to "occupant," or "resend[ing] the notice by regular mail, so that a signature was not required." *Id.* at 234–35. Despite the property owners' suggestion that the State should have searched for his new address in the phonebook and other government records such as income tax rolls, the Court "[did] not believe the government was required to go this far." *Id.* at 235–36.

10

This Court has contemplated similar issues. In *Western Loan and Building Co. v. Bandel*, a city provided an assessment roll to a certain property, but the land involved was not described properly. 57 Idaho 101, 63 P.2d 159, 160 (1936). "An assessment roll is a public record to which property owners are entitled to look for information as to whether their property has been assessed." *Id.*at 109, 63 P.2d at 162. In that case, because of the "erroneous and misleading" description of the property, this Court found that the owners would have been justified in believing their property had not been among those that were assessed. *Id.* The statute regarding notice for the assessment rolls required

> publication, by the clerk of the municipality, of notice in the official newspaper that the assessment roll is on file in his office, and said notice shall state the time at which the council will hear and consider objections to the roll by parties aggrieved by the assessments.

*Id.* at 112, 63 P2d at 163. The city ultimately issued a tax deed for the property, but this Court held that because of the deficiency in the notice, the owner's due process rights had been affected. *Id.* The Court reasoned that the lack of notice and defective tax roll did "not relate to mere irregularities in the assessment proceedings," but related to "safeguards [which] protect[] the fundamental, constitutional rights of the citizen." *Id.*

In *Giacobbi v. Hall*, this Court held that Blaine County was neither diligent nor responsible in searching for the property owner's address before issuing a tax deed and thus notice by publication denied the property owner due process. 109 Idaho 293, 297, 707 P.2d 404, 408 (1985). In that case, after notice by certified mail was returned undelivered, the Treasurer searched the county records and the local phone book and contacted the local post office to obtain the property owner's address prior to publication. *Id.* at 294, 707 P.2d at 405. Although the County Recorder's office sometimes contacted title companies to locate a taxpayer's address, it did not do so in that case. *Id.* at 295, 707 P.2d at 406. As discussed above, the controlling statute at the time the case was decided stated, "in the event that such notice is served by [registered or certified mail] and returned undelivered *and* after reasonable and diligent search and inquiry . . . ." *Id.* at 296, 707 P.2d at 407 (quoting I.C. § 63-1126B(b) (emphasis added by the Court)). In its decision, the Court reasoned that the statute contemplated

> that certified or registered mail notice may be undeliverable, and may be so for any number of reasons: no address on the deed, an incorrect and ineffective address, or a last known address ineffective because the parties have moved. The statute does not specify that for some reasons a reasonable and diligent inquiry

11

> will be done, and for others not—it simply indicates that whenever mail is undeliverable, a reasonable search and inquiry will be done *before* notice is published.

*Id.* (emphasis added).

*Giacobbi* is heavily relied on by the Phelpses, but it lends little help to their argument. Though factually similar to this case, *Giacobbi* was decided before the 1996 change in the applicable statute. H.B. 783 amended the steps necessary for a County to take property by tax deed in order to make service more economical, including "potential cost savings to the counties by improving the efficiency of property tax administration." The change included specifically removing the language "in the event that such notice is served . . . and returned undelivered and after *reasonable and diligent search and inquiry* . . . ." I.C. § 63-1126B (repealed effective Jan. 1, 1996) (emphasis added). Because of the change in language to the applicable statute, *Giacobbi* is no longer relevant and does not offer adequate support to the Phelpses that the notice attempt here was insufficient.

While *Giacobbi* is of no help to the Phelpses, we recognize that there are three flaws with the notice given by the County. First, the Pending Issue Letters were originally mailed less than two months before the July 22, 2014, issuance of the tax deeds. Idaho Code section 63-1005(2)(a) provides that "such service of notice [must] be made no more than five (5) months nor no less than two (2) months before the time set for the tax deed to issue." The district court noted that the Pending Issue Letters here were mailed out on May 23, 2014, one day late. Second, the Pending Issue Letters incorrectly stated that the hearing on the matter would be held on July 23, 2014 while the hearing was actually held on July 22, 2014. The district court remarked that these errors mean that

> [e]ither the Pending Issue Letters contained a typographical error stating that that [sic] date of issuance would be July 23, 2014 when they should have said July 22, 2014, or the Pending Issue Letters were sent out one day too late: On May 23, 2014, when the deadline was May 22, 2014.

Third, the service by publication in the Idaho World ran one day late. To comply with the statute, publication must be made at least once a week for four consecutive weeks, the last publication of which is to be no more than two months nor less than fourteen days before the time set for the tax deed to issue. The advertisement should have run between May 22, 2014, and July 8, 2014, but it finished running on July 9, 2014, one day short of fourteen days before the date the tax deed was set to issue on July 22, 2014.

12

While these errors in the notice process are troubling, we find that they did not affect the substantial rights of the Phelpses. Boise County sent multiple Pending Issue Letters by certified mail and uncertified mail to more than one address. The method of sending the letters by uncertified mail was one suggested by the United States Supreme Court in *Jones* as a way to serve notice when certified mail has been returned unclaimed. *See* 547 U.S. at 234–35. Furthermore, the Phelpses testified that they did not receive any of these notices and did not see the notice in the Idaho World, yet they took no action for eighteen months after Boise County sent the June 2014 email to Ms. Phelps notifying her that "[y]our taxes are delinquent an[d] you need to pay the 2010 taxes of $11,908.79 [b]efore July 23, 2014 to avoid a tax deed." Construing the district court's findings of fact in favor of the judgment entered, there is no indication that even if the County's notices had contained no errors, there would have been any impact on the Phelpses.

In *Bandel*, the Court voided a tax deed for an "erroneous and misleading" property description, but was careful to distinguish the lack of notice and flawed description as not "mere irregularities in the assessment proceedings." 57 Idaho at 112, 62 P.2d at 163. By contrast here, as the district court held, the defects in the notice amounted to "mere irregularities." The incorrect hearing date had no effect, since the Phelpses testified that they had no intention of attending the hearing because they did not know about it. The one-day-short publication notice similarly had no effect, because again, the Phelpses testified that they never saw the advertisement, so even if Boise County complied perfectly with the fourteen-day requirement, it would not have changed the fact that the Phelpses did not see the advertisement.

We also hold that the efforts made by Boise County to "attempt to locate" the Phelpses after some certified letters were returned were reasonable. Besides obtaining the March 2014 litigation guarantees, upon return of some of the Pending Issue Letters, Boise County conducted new internet searches for any other possible addresses. Boise County also searched the county assessor records and the treasurer's records to determine whether any new addresses were listed for the Phelpses. Finally, Boise County provided the email notice referenced above to the Phelpses, which warned them of the pending tax deed risk.[2] These efforts are sufficient to satisfy

---

[2] We note that Boise County's reply to Ms. Phelps' email, sent on June 23, 2014 warned Ms. Phelps that a tax deed would issue if the Phelpses did not pay the delinquent amount by July 23, 2014. Ms. Phelps acknowledged at trial that she received this email, though she was under the erroneous impression a written notice would follow. Ms. Phelps' receipt of the County's reply email is akin to actual knowledge and the district court theorized as much. That

13

due process. We therefore affirm the judgment of the district court and find that Boise County conducted reasonable attempts to locate the Phelpses, despite the errors in the printed notices. The statute does not require Boise County to go further than it did.

## C.    Attorney Fees

Boise County argues that it is entitled to attorney fees under Idaho Code section 12-117 because the Phelpses argument is not based on a reasonable interpretation or expansion of the law. The Hardys request attorney fees under Idaho Code section 12-121 because the Phelpses' challenge to the district court's exercise of discretion was brought frivolously, unreasonably, and without foundation.

Idaho Code section 12-117 states that "in any proceeding involving as adverse parties a state agency . . . and a person," this Court shall award attorney fees "if it finds that the nonprevailing party acted without a reasonable basis in fact or law." § I.C. 12-117.

Under Idaho Code section 12-121, attorney fees are awarded to the prevailing party if the Court believes that the proceeding was brought, pursued, or defended frivolously, unreasonably, or without foundation. I.C. § 12-121.

Here, while the Hardys and Boise County are the prevailing parties, Boise County failed to follow the precise requirements of the statute, stating an incorrect hearing date in the Pending Issue Letter and failing to follow the statutory timing of notice. These errors would not have occurred had Boise County been more diligent in complying with the statute. Thus, attorney fees will not be awarded to the County and will hopefully serve as the County's "tuition" to do a more precise job in the future. Additionally, the Phelpses did not pursue this appeal without a reasonable basis in fact or law; the appeal had adequate legal foundation. Both of the Phelpses' interpretations of the statute were fair and so the appeal was not frivolous. Thus, the Hardys are also not entitled to an award of attorney fees.

## VI. CONCLUSION

The order of the district court finding that Boise County's efforts to notify the Phelpses of the tax deed satisfied the notice provision of the statute and were sufficient to satisfy due process

---

said, we do not reach such a conclusion because the email does not: 1) mention or give notice of the formal Pending Issue Letters; 2) provide an accurate deadline for payment of the past-due taxes; 3) contain any specifics about the Phelpses' right to a hearing; or 4) mention that a hearing would even be held. While the email is relevant to Boise County's efforts to apprise the Phelpses of their perilous position, it is insufficient of itself to provide actual notice.

requirements is affirmed. Costs on appeal to Respondents, but we decline to award attorney fees on appeal.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.