# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48591

BRANDON REYES KELLY, )
)
   Petitioner-Respondent, ) Boise, January 2022 Term
)
v. ) Opinion filed: September 26, 2022
)
BRANDI LEIGH KELLY, ) Melanie Gagnepain, Clerk
)
   Respondent-Appellant. )
)

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Bruce L. Pickett, District Judge. Mark Riddoch, Magistrate Judge.

The decision of the district court is <u>affirmed in part</u> and <u>reversed in part</u>.

David A. Johnson, PA, Idaho Falls, for Appellant. David A. Johnson argued.

Smith Woolf Anderson & Wilkinson, PLLC, Idaho Falls, for Respondent. Aaron J. Woolf argued.

_____

ZAHN, Justice.

This case arises from Brandi and Brandon Kelly's divorce proceedings and primarily concerns the interpretation and enforcement of the parties' prenuptial agreement ("PNA"). For the reasons set forth below, we affirm the district court's decision in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual background.

Brandon and Brandi married on April 20, 2015, and had a child on June 9, 2015. Brandon filed for divorce on May 30, 2017. This Court previously addressed the parties' disputes regarding child custody in *Kelly v. Kelly*, 165 Idaho 716, 451 P.3d 429 (2019). This appeal primarily concerns their disputes regarding the division of property and attorney fees.

At the time of the marriage, Brandon was a neurosurgeon and 50% owner in Idaho Neurosurgery and Spine, PLLC ("INS"), the medical practice through which Brandon practices medicine. Dr. Clark Allen owned the other half of INS. At the time of marriage, Brandon was

1

also one of three owners of Weyland-Yutani, LLC, ("Weyland"), an entity which owns the building where INS is located. During the parties' marriage, one of Weyland's owners, Dr. Huneycutt, sold his interest in Weyland to Brandon and Dr. Allen for $200,000. Dr. Allen wrote Dr. Huneycutt a check for the $200,000. INS subsequently issued two K-1 distributions with profits from INS, each in the amount of $100,000, to reimburse Dr. Allen. As a result of the transaction, Brandon and Dr. Allen each own 50% of Weyland.

Prior to the marriage, Brandon entered into a professional services agreement with Eastern Idaho Regional Medical Center ("EIRMC"). In the agreement, Brandon agreed to provide "professional medical care to [EIRMC's] Emergency Department patients on a 24/7 on-call basis in the specialty of Neurological Surgery" in exchange for specified compensation, which was paid monthly. The agreement expired on October 21, 2016, while the parties were still married. Later during the marriage, Brandon entered into another agreement with EIRMC on March 1, 2017, with an expiration date of March 1, 2019.

Prior to marriage, Brandon and Brandi entered into a prenuptial agreement ("the PNA") seeking to establish their rights to various items of property. Brandi and Brandon were represented by separate counsel during the negotiation and execution of the PNA. Before signing the PNA, Brandi reviewed Brandon's 2014 tax return. Brandi's attorney requested changes to the PNA's definitions of separate and community property, which were made. Brandi expressly waived her right to review other financial documentation concerning Brandon's assets and signed the PNA.

During the marriage, Brandon obtained 30 shares in Mountain View Hospital ("MVH") and transferred them to Virtucon, LLC, a business owned by Brandon. The shares cost $259,021.76. Brandon acquired the shares by borrowing $250,000 from D.L. Evans Bank and paying the balance with a distribution of profits from INS. Brandon signed a promissory note with D.L. Evans on April 20, 2016, and the loan was secured by a deed of trust on a home owned by Brandon. Brandi did not sign the promissory note.

**B. Procedural history.**

During the pendency of the divorce action, and relevant to this appeal, Brandon filed four motions for partial summary judgment and Brandi filed two motions for partial summary judgment, each of which required interpretation of various provisions of the PNA. Brandon also

2

filed three contempt motions against Brandi, and Brandi filed one contempt motion against Brandon. We discuss the relevant portions of this motion practice in our analysis below.

The remaining property issues proceeded to trial. On July 19, 2018, the magistrate court entered its 69-page findings of fact and conclusions of law. Brandi then filed a motion for reconsideration, which the magistrate court denied. The magistrate court entered its judgment regarding property and debt, which Brandi timely appealed to the district court. On January 11, 2021, the district court issued a 50-page opinion, which reversed in part, affirmed in part, and vacated the magistrate court's contempt order and remanded for further proceedings. Brandi timely appealed the district court's intermediate appellate decision to this Court.

## II. ISSUES ON APPEAL

1. Whether the district court erred when it affirmed the magistrate court's determination that the PNA is a valid, enforceable contract?

2. Whether the district court erred when it affirmed the magistrate court's decision that the PNA barred Brandi from requesting attorney fees for issues concerning child custody, visitation or support?

3. Whether the district court erred when it affirmed the magistrate court's denial of Brandi's request to access community property to pay her attorney fees and costs?

4. Whether the district court erred when it affirmed the magistrate court's determination that the EIRMC payments were Brandon's separate property?

5. Whether the district court erred when it affirmed the magistrate court's determination that the ownership interest in Weyland was Brandon's separate property?

6. Whether the district court erred when it affirmed the magistrate court's determinations regarding the value and award of specific items of personal property?

7. Whether the district court erred when it affirmed the magistrate court's decision to deduct $66,448.91 from Brandi's share of community property?

8. Whether the district court erred when it affirmed the magistrate court's decision to reimburse Brandon for taxes he paid on behalf of the community for the years 2015, 2016, and 2017?

9. Whether the district court erred when it affirmed the magistrate court's decision that the MVH shares were Brandon's separate property?

10. Whether the district court gave sufficient direction in its remand on the issue of child support?

11. Whether either party is entitled to an award of attorney fees on appeal?

3

### III. STANDARD OF REVIEW

"[W]hen considering an appeal from the granting of a motion for summary judgment, this Court's standard of review is the same as that used by the trial court in passing on the motion." *Pratt v. State Tax Com'n*, 128 Idaho 883, 884, 920 P.2d 400, 401 (1996). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Lee v. Litster*, 161 Idaho 546, 549, 388 P.3d 61, 64 (2017) (citation omitted). If the record reveals that there is no genuine issue of material fact, "then only a question of law remains, over which this Court exercises free review." *Id.* (citation omitted).

"When an appeal is initially taken to the district court from a decision by a magistrate, any subsequent review will be conducted independent of, but with due regard for, the decision of the district court." *Pratt*, 128 Idaho at 884, 920 P.2d at 401. When reviewing findings of facts and conclusions of law, this Court reviews the trial court's "record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). "If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure." *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981).

### IV. ANALYSIS

**A. The district court did not err when it affirmed the magistrate's determination that the PNA is a valid, enforceable contract.**

In Brandon's first motion for partial summary judgment, he requested the magistrate court determine that the PNA was valid and enforceable. Brandi argued in opposition that there were genuine issues of material fact concerning the nature of the property listed in schedule A of the PNA. The magistrate court issued a written order granting Brandon's motion for partial summary judgment in part, finding that the PNA was valid and binding because Brandi conceded the validity of the PNA and conceded that the PNA complied with Idaho Code section 32-917. The district court affirmed the magistrate court and determined that Brandi did not contest the validity of the PNA before the magistrate court.

4

On appeal to this Court, Brandi argues that the district court's decision should be reversed because the magistrate court's erroneous interpretation of various PNA provisions rendered the PNA both unenforceable and unconscionable. In opposition, Brandon argues that Brandi waived her argument on this issue because she did not contest the validity of the PNA before the magistrate court.

To preserve an issue for appeal, "[b]oth the issue and the party's position on the issue must be raised before the trial court." *State v. Foeller*, 168 Idaho 884, 891, 489 P.3d 795, 802 (2021). Brandi expressly stated to the magistrate court that she was not disputing the validity of the PNA and that the PNA "should control the disposition of property in this matter." The district court concluded this concession constituted a waiver of the issue on intermediate appeal. We agree and affirm the district court's decision on this issue.

## B. The district court erred in affirming the magistrate court's decision that the PNA barred Brandi from requesting attorney fees for child custody, visitation and support matters.

In Brandon's fourth motion for partial summary judgment, he asked the magistrate court to determine that section 8.01 of the PNA required both parties to pay their own attorney fees and costs for issues related to child custody, visitation, and support. Brandi thereafter filed her second motion for partial summary judgment, asking the magistrate court to determine that section 8.01 did not address attorney fees and costs for issues related to child custody, visitation or support, and that denying her the opportunity to request fees and costs for such issues "would be a denial of justice and equity." The magistrate court granted Brandon's motion and denied Brandi's motion, finding that section 8.01 of the PNA required both parties to pay their own attorney fees and costs of suit on *all* issues, including those related to child custody, visitation or support.

The district court affirmed the magistrate court's decision. The district court concluded that because Brandi conceded the validity of the PNA before the magistrate court, Brandi did not preserve this issue on appeal. Nonetheless, the district court analyzed the magistrate court's interpretation of section 8.01 of the PNA. After recognizing this Court's decision in *Poesy v. Bunney*, 98 Idaho 258, 561 P.2d 400 (1977), the district court concluded that the magistrate court did not err by interpreting the PNA as barring an award of attorney fees for issues related to child custody, visitation, or support.

5

On appeal to this Court, Brandi argues that the magistrate court's decision was erroneous for two reasons: (1) the PNA did not specifically address fees for issues related to child custody, visitation or support, and (2) the denial of attorney fees and costs for issues concerning child custody, visitation or support is against public policy. Brandon argues that Brandi failed to address the district court's holding that Brandi did not preserve this issue for appeal. Next, Brandon contends that Brandi never showed an actual need for attorney fees and could not have shown such a need because she received significant financial resources to pay for her attorney fees. Finally, Brandon argues that the PNA does not allow the award of attorney fees for suits involving an "action for divorce," which includes issues related to child custody, visitation or support.

1. Brandi preserved her argument regarding the interpretation of section 8.01 of the PNA.

The district court concluded on intermediate appeal that Brandi's concession concerning the validity of the PNA extended to section 8.01. However, the concession the district court relied on was made in response to Brandon's first motion for summary judgment, which concerned the definitions of community property and separate property. Further, Brandi's attorney fee argument was not contrary to her concession because she contests the interpretation of that provision, as opposed to the validity of the agreement. For example, in her second motion for summary judgment, Brandi did not argue that the entire attorney fee provision was invalid; rather she asserted that the attorney fee provision did not cover fees related to child custody, visitation, or support matters. We also note that Brandi argued that interpreting section 8.01 as barring the award of fees for issues related to the best interest of the child would be unjust and inequitable, thus raising a public policy rationale for her proffered interpretation of section 8.01. Therefore, we conclude that Brandi's arguments in her second motion for summary judgment were sufficient to preserve the issue for appeal.

2. A bar on attorney fees and costs for issues relating to child custody, visitation, and support violates Idaho public policy.

The parties present competing arguments concerning the interpretation of section 8.01 of the PNA:

Each of the parties hereto agrees that in the event of their separation for any reason, or *the institution by either of an action for divorce* or legal separation, neither shall have any right against the other to claim or receive: (i) all or any portion of the Separate Property of the other party; (ii) more than one-half of the

6

parties' Community Property; or (iii) *attorney fees or costs of suit and each party expressly waives any right thereto*. Nothing in this paragraph 8.01 prohibits a party from making a claim for spousal support (alimony) in any action for divorce or legal separation.

(Emphasis added.) The parties essentially ask this Court to determine whether the phrase "action for divorce" in section 8.01 includes issues related to child custody, visitation, or support. In this case it is unnecessary to analyze this language because we conclude that a contractual provision that bars a party from requesting attorney fees for issues related to such issues violates public policy.

"An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy." *Quiring v. Quiring*, 130 Idaho 560, 566, 944 P.2d 695, 701 (1997). Determining whether a contract violates public policy is a question of law for the Court to decide based on the facts and circumstances of the case. *Id.* "[T]he courts will not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public in some way." *Neustadt v. Colafranceschi*, 167 Idaho 214, 221, 469 P.3d 1, 8 (2020) (alteration and citation omitted). "Public policy may be found and set forth in the statutes, judicial decisions or the constitution." *Id.* Idaho law similarly provides that prenuptial agreements may not violate public policy. I.C. 32-923(1)(h).

Regarding public policy, in 1961 this Court stated that in issues concerning child custody, "[c]onsiderations of justice and public policy demand an opportunity for [a parent] to be represented." *Merrill v. Merrill*, 83 Idaho 306, 312–13, 362 P.2d 887, 891 (1961). In *Merrill*, a mother appealed the trial court's child custody decision and asserted, as one issue on appeal, that the trial court erred in only awarding her $50 for her attorney's fee on appeal. *Id.* at 312, 362 P.2d at 891. After recognizing that justice and public policy dictated the mother be provided representation on appeal, this Court remanded the matter for the trial court to award her a reasonable attorney's fee. *Id.* at 313, 362 P.2d at 891.

Over 10 years later, in *Dykstra v. Dykstra*, we recognized that because the care, maintenance, and welfare of minor children were at issue, and since their welfare was of paramount importance, the trial court did not err in awarding attorney fees to the mother. 94 Idaho 797, 800, 498 P.2d 1270, 1273 (1972). The evidence demonstrated the mother would otherwise have been unable to pay her attorney's fees in an action seeking to modify a child support order. *Id.*

7

Several years later, this Court held in *Poesy* that, "attorney's fees must be allowed at the discretion of the trial court whenever one parent to a child custody case, whether husband or wife, is found to be unable to proceed without payment of attorney's fees, and when the other parent is able to pay that amount." *Id.* at 264, 561 P.2d at 406. While *Poesy* did not involve the interpretation of a premarital agreement, this Court discussed Idaho's public policy concerning the award of attorney fees in actions litigating the best interest of the child:

> It is a specious position to contend that after the appeal the winning, but not the losing, parent may be entitled to attorney's fees. For if a parent is unable to proceed without payment of those fees, that person will never be able to reach the point of winning or losing the appeal. To protect the appellate process and its review of the best interests of the child, *it is necessary to allow fees to either side unable to proceed without such an order; and this is done in the best interest of the child, notwithstanding the outcome of the appeal*. This is not to say that either the husband or the wife, whether appellant or respondent, will always be entitled to fees; rather, each case must be determined on its own merits, *with the ultimate goal of allowing both sides to present their case on appeal in order that the best interests of the child may be properly reviewed*.

*Id.* (emphasis added). The principles discussed in *Poesy* apply with equal force when issues involving the best interests of the child are litigated before our trial courts. Therefore, we hold that contractual provisions which prohibit the allowance of attorney fees and costs for issues concerning child custody, visitation, and support violate public policy.

While we favorably cite our decisions in *Merrill*, *Dykstra* and *Poesy* for their recitation of public policy, we must acknowledge and disclaim the parts of those decisions that suggest our trial courts have the inherent authority to award attorney's fees in child custody cases. *Id*. This Court has repeatedly held that a grant of attorney fees must be supported by statutory authority or by contract. *Doe v. Shoshone-Bannock Tribes*, 159 Idaho 741, 748, 367 P.3d 136, 143 (2016). A party seeking attorney fees must assert the specific statute on which the award is based, and a trial court is not empowered to award fees on a basis not asserted by the moving party. *Bingham v. Montane Resource Assoc's*, 133 Idaho 420, 424, 987 P.2d 1035, 1039 (1999). We abrogate those portions of our decisions in *Merrill*, *Dykstra* and *Poesy* that suggest otherwise. However, we also note that following our decisions in these cases, the Idaho Legislature adopted amendments to Idaho Code section 32-704 that authorize our trial courts to award an allowance of attorney fees in domestic relations cases after considering the factors set forth in Idaho Code section 32-705. *See* S.B. 1301, 45th Leg., 2d Reg. Sess. (Idaho 1980).

8

In this case, the district court determined that it did not need to address Brandi's public policy argument concerning section 8.01 of the PNA because Brandi failed to demonstrate a need for fees under the factors contained in section 32-705. The district court erred in failing to address the issue before it, which was not whether Brandi *established a need* for an allowance of fees under sections 32-704 and 32-705, but rather whether the magistrate court erred when it determined that section 8.01 *prevented Brandi from seeking* an allowance of fees for issues concerning child custody, visitation, and support. The district court was not reviewing whether the magistrate court improperly denied a request for attorney fees, but whether the magistrate court erred when it granted summary judgment in favor of Brandon concerning the application of section 8.01 of the PNA. For the reasons stated previously, to the extent that section 8.01 prohibits Brandi (or Brandon) from requesting attorney fees for issues related to child custody, visitation, or support, it is against public policy, in violation of Idaho Code section 32-923(1)(h), and therefore void. We reverse the district court's decision on this issue.

Even though we conclude that section 8.01 is void as it relates to fees for child custody, visitation and support, our decision should not be read to hold that section 8.01 is entirely unenforceable. Our decision today only interprets section 8.01 as it applies to requests for attorney fees for issues related to child custody, visitation, and support. Nor should our decision today be read to guarantee Brandi an allowance of attorney fees and costs on remand. Rather, the magistrate court must assess any request for attorney fees for issues related to child custody, visitation, and support under sections 32-704 and 32-705. *See Papin v. Papin*, 166 Idaho 9, 39, 454 P.3d 1092, 1122 (2019).

## C. Brandi waived her appeal concerning her request to access community property to pay her attorney fees and costs.

Brandi filed a motion requesting the magistrate court to divide the community income or to appoint an individual to disburse the funds according to the needs of the parties, including attorney fees and costs incurred in the case. The magistrate court denied Brandi's motion and instead ordered each party to receive $50,000 from community accounts to pay legal expenses. The following year the magistrate court ordered Brandon to withdraw $25,000 from community accounts and give the funds to Brandi for litigation expenses. The magistrate court later issued an order that required Brandi to reimburse Brandon from her share of the community property for attorney fees in the amount of $40,546.50 that he paid on her behalf. Those fees were in addition to the $75,000 that the magistrate court had previously ordered be disbursed to Brandi. The

9

magistrate used the bank statements from Brandon's credit cards to determine the amount of Brandi's attorney fees that Brandon paid. The district court did not address this issue in its decision.

Brandi argues that the magistrate court abused its discretion by not allowing her to access community income earned during the marriage to pay for her attorney fees and costs. Brandon argues that Brandi failed to properly preserve this issue because the district court never addressed this point on appeal and Brandi should have moved the district court to rule on this portion of her brief.

The record reveals that Brandi's argument on this issue was only mentioned in passing to the district court, which may explain why the district court did not rule on the issue. In addition, on appeal to this Court, Brandi cites no law or authority to support her arguments, which constitutes a waiver of the issue. *Trotter v. Bank of N.Y. Mellon*, 152 Idaho 842, 848, 275 P.3d 857, 863 (2012). Therefore, we decline to consider this issue on appeal.

**D. The district court erred when it affirmed the magistrate court's summary judgment decision concluding that Brandon's payments from EIRMC were his separate property.**

On January 31, 2018, Brandon filed his third motion for partial summary judgment requesting the court to determine that the payments he received from EIRMC were his separate property. On February 3, Brandi filed a motion for partial summary judgment requesting the magistrate court declare that the payments were community property subject to division between the parties. The magistrate court granted Brandon's motion, denied Brandi's motion, and held that the payments were Brandon's separate property under the PNA because Brandon received them as an independent contractor rather than an employee and therefore the payments were not "wages," and also because they were earnings from a sole proprietorship in which Brandon had an interest prior to marriage. The district court affirmed the magistrate court's decision.

On appeal, Brandi first argues that the district court applied the wrong standard of review because the district court applied a substantial and competent evidence standard instead of the summary judgment standard. Additionally, Brandi argues that the magistrate court improperly interpreted section 2.04(b) of the PNA to exclude the EIRMC payments from the parties' community property. Brandon argues that the magistrate court correctly decided this issue.

We first address the proper standard of review. The magistrate court decided this issue on summary judgment. On appeal from an order granting summary judgment the reviewing court should apply the same standard of review that the magistrate court used when deciding the

10

motion. *Campbell*, 155 Idaho at 695, 316 P.3d at 107. When the magistrate court issued its summary judgment decision on this issue in 2018, Idaho Rule of Family Law Procedure 505 directed the court to grant summary judgment if there was no genuine issue as to any material fact and the moving party was entitled to judgment as a matter of law. In its appellate decision the district court did not apply this standard, but instead applied the standard applicable to appellate review of a trial court's findings and facts and conclusions of law. We conclude that the district court erred by failing to apply the proper standard of review. However, our appellate review of an order granting summary judgment is likewise conducted utilizing the same summary judgment standard used by the magistrate court and we afford no deference to the district court's decision. *In re Smith*, 164 Idaho 457, 467, 432 P.3d 6, 16 (2018). As such, the district court's error does not require reversal and remand.

This issue requires us to interpret and apply the PNA provisions defining separate and community property. The purpose of contract interpretation is to "determine the intent of the contracting parties at the time the contract was formed." *Thurston Enterprises, Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 709, 717, 435 P.3d 489, 497 (2019). This Court views the contract as a whole when determining the intent of the parties. *Id.* When interpreting a contract this Court begins with the plain language of the agreement. *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010) (internal citations and quotations omitted). "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *Id.* (quoting *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001)).

Section 2.01 of the PNA defines Brandon's separate property and provides, in relevant part:

> The terms "Separate Property of Brandon" and "his Separate Property" shall refer to all of the following:
>
> (a) The property and assets of every kind or nature, real, personal or mixed, owned by him at the time of the marriage, whether or not specifically described on Schedule A hereto.
>
> . . .
>
> (e) Any income derived from any partnership, corporation, limited liability company, joint venture or business entity in which Brandon has a separate property interest as of the date of marriage.
>
> . . .

11

Schedule A to the PNA identified Brandon's separate property and under the heading "business interests," included Brandon's membership interest in INS and Weyland. Schedule A did not, however, include a sole proprietorship or the professional services agreement with EIRMC.

Section 2.04 of the PNA defines community property and provides, in pertinent part:

The term "Community Property" shall refer to:

. . .

(b) Brandon's and Brandi's earnings from their labor and efforts during the marriage, including, but not limited to, salaries, fees, commissions, stock options and similar compensation from employment and wages derived from the operation of any sole proprietorship, partnership or other business entity, whether it is Community Property or Separate property (sic).

. . .

The plain language of section 2.04(b) states that Brandon's earnings from his labor and efforts during the marriage are community property. The section defines the term "earnings" as *including, but not limited to,* fees, compensation from employment, and wages derived from the operation of any sole proprietorship, partnership or other business entity. In contrast, section 2.01(e) provides that any income from a business entity in which Brandon had a separate property interest as of the date of marriage is Brandon's separate property. To determine whether the EIRMC payments are considered community or separate property under the PNA, we must determine whether the EIRMC payments constituted earnings from Brandon's labor and efforts during the marriage or were income from a separate business entity in which Brandon had a separate property interest before the marriage.

The magistrate court granted summary judgment, in part, based on its determination that the payments were made to Brandon in his capacity as an independent contractor and therefore did not constitute wages from employment. The magistrate court erred when it interpreted section 2.04(b) as excluding all independent contractor earnings from the definition of community property. The unambiguous language of section 2.04(b) defines community property as "earnings" from Brandon's "labor and efforts." The references to "similar compensation from employment and wages" are simply examples of "earnings." The use of the phrase "including, but not limited to" in section 2.04(b) indicates that "earnings" encompasses more than wages and compensation from employment. The defining feature of community property in section 2.04(b) is whether the earnings were the product of Brandon's labor and efforts during the marriage.

12

To this point, the magistrate court noted in its summary judgment decision that the agreements only compensated Brandon for being on call and not for the medical services he provided. This distinction is not significant when applied to the language of section 2.04(b). Regardless of what services Brandon agreed to provide, the agreements compensated Brandon for his labor and efforts. To the extent his labor and efforts occurred during the marriage, the earnings received as a result of his labor and efforts are community property pursuant to section 2.04(b). The only evidence that Brandon submitted in support of his argument that the payments were not community property under section 2.04(b) was that the agreements referred to him as an independent contractor and therefore he did not earn "wages" from "employment." We find this argument unpersuasive. The express language of section 2.04(b) is clear that the independent contractor label does not control whether Brandon's earnings were community property and instead the defining feature is whether the earnings resulted from Brandon's labor and efforts during the marriage. We conclude the undisputed evidence in the record establishes that the EIRMC payments received during the parties' marriage were the product of Brandon's labor and efforts and therefore constitute community property under section 2.04(b).

The magistrate court also based its summary judgment decision on its determination the payments were earnings from a sole proprietorship that Brandon owned prior to the marriage and therefore were Brandon's separate property pursuant to section 2.01(e) of the PNA. On appeal, Brandi argues the magistrate court erred in granting summary judgment because it ignored her evidence to the contrary, namely that the EIRMC contracts were made with Brandon rather than a business entity and that it was not until after the parties' marriage that Brandon began reporting the earnings as business income on his tax return. Brandon contends that the undisputed evidence established that he received the EIRMC payments as a sole proprietorship established prior to marriage, thus making the payments separate property under section 2.01(e).

Section 2.01(e) refers to business entities and then identifies a list of such entities: "income earned from any partnership, corporation, limited liability company, joint venture or business entity in which Brandon has a separate property interest as of the date of marriage." A sole proprietorship is not included in the list of entities. The law is clear that a sole proprietorship is not an independent legal entity. "The sole proprietorship form of doing business encompasses the complete identify of the business entity with the proprietor himself or herself; thus, a sole proprietorship has no legal existence apart from its owner." 18 Am. Jur. 2d *Corporations* § 5

13

(2022). The business entities identified in section 2.01(e) require an act of creation and once created, are recognized as legally distinct from their creator. Further, because a sole proprietorship does not exist separately from its owner, it is not a separate legal entity in which the owner can "acquire" a "separate property interest." Moreover, while section 2.01(c) of the PNA does not mention a sole proprietorship, it is included in the definition of community property in section 2.04(b). As a result, we conclude that section 2.01(e) does not encompass sole proprietorships and therefore does not encompass the EIRMC payments received during the marriage.

This conclusion is borne out by the evidence that indicates that prior to the marriage Brandon treated the EIRMC agreements as personal contracts rather than contracts of a separate business entity. Brandon contracted with EIRMC as Brandon R. Kelly, MD rather than under an assumed business name. Prior to the marriage Brandon reported the EIRMC payments as "other income" on his 2014 tax return, rather than "business income." Finally, Brandon did not identify either the EIRMC agreement or the sole proprietorship as a separate business interest on Schedule A of the PNA. It was only after the parties' marriage that Brandon began reporting the payments as "business income" on his 2015 tax return and filed a separate schedule to report the payments as income from a sole proprietorship. The undisputed evidence disproves Brandon's claim that the payments were income from a business that Brandon owned prior to the parties' marriage.

We hold that the magistrate erred in granting summary judgment in favor of Brandon, reverse its grant of summary judgment, and direct that summary judgment be entered in favor of Brandi on this issue.

## E. The district court did not err when it affirmed the magistrate's determination that Brandon's interest in Weyland-Yutani, LLC is his separate property.

On October 25, 2017, Brandon filed his second motion for partial summary judgment, arguing that the 50% interest in Weyland was his separate property. The magistrate court granted Brandon's motion. The district court affirmed the magistrate court's decision after determining that Brandi waived this issue because her brief consisted of "conclusory statements made without any reference to the record or legal authority." The district court then determined that even if Brandi had not waived the issue, that substantial and competent evidence supported the magistrate court's decision and Brandi failed to demonstrate that the magistrate court abused its discretion.

14

Brandi first responds that the district court erred because it applied the wrong standard of review on this issue. Brandi next argues the magistrate court erred in granting summary judgment because Brandon failed to carry his burden to establish that he used separate property funds to purchase the additional 1/6 interest in Weyland during the marriage.

Brandon first contends that Brandi failed to address the district court's determination that she waived this issue on intermediate appeal. Brandon next contends that the magistrate court properly granted summary judgment because he acquired the additional 1/6 interest in Weyland with profits from his separate property business, INS.

Brandon is correct that Brandi's opening brief to this Court failed to address the district court's primary holding that she waived the issue by failing to provide sufficient argumentation and citation to the record in support of her position. The district court's primary basis for affirming the magistrate court was Brandi's failure to support her contentions with citations to legal authority or the record. The district court only addressed the merits of the issue in the event that it was later determined Brandi had not waived the issue. Brandi does not challenge the district court's conclusion that she waived this issue on intermediate appeal and has therefore failed to demonstrate that the district court erred. We affirm the district court's decision affirming the magistrate court's determination that the 1/6 interest in Weyland was Brandon's separate property.

## F. The district court did not err when it affirmed the magistrate court's determinations regarding the award and valuation of community property.

After hearing testimony at trial concerning the valuation of various items of personal property, the magistrate court determined the value of the items and assigned them to either Brandon or Brandi. On intermediate appeal, the district court affirmed the magistrate court's findings and conclusions. On appeal to this Court, Brandi generally argues that the magistrate court used inconsistent methods to value and divide property, which benefitted Brandon and harmed her. Brandi also contends that the magistrate court abused its discretion in its award and valuation of (1) a diamond bracelet; (2) purses; (3) guns; (4) a Rolex watch; and (5) household furniture. Brandon argues that the magistrate court did not abuse its discretion and the district court properly affirmed the magistrate court's decision.

First, concerning Brandi's argument that the magistrate court used inconsistent methods of valuation, which benefitted Brandon and harmed Brandi, the district court determined that

15

Brandi waived this argument because she cited no legal authority in support. Brandi has not challenged that determination. Therefore, we will not address this argument.

We next address Brandi's argument that the magistrate court erred in its award of specific items of personal property. Brandi contends the magistrate court erred because it failed to properly apply Idaho Code section 32-712. While Brandi is correct that section 32-712 addresses the disposition of community property, she fails to recognize that section 32-712(b)(2) directs a court to consider "[a]ny antenuptial agreement of the parties" when dividing community property. The section further provides that the court has no authority to amend or rescind an antenuptial agreement. I.C. § 32-712(1)(b)(2). "Where parties enter into a valid antenuptial agreement, their property rights are determined by that agreement and not by the Idaho Code provisions dealing with community property rights." *Weilmunster v. Weilmunster*, 124 Idaho 227, 235, 858 P.2d 766, 774 (Ct. App. 1993). Because these provisions of the PNA were valid and enforceable, the magistrate court did not err in awarding personal property in accordance with the PNA.

We now turn to Brandi's argument that the magistrate court abused its discretion in valuing specific property. "In divorce proceedings, valuation of community property is within the discretion of the trial court and will not be disturbed on appeal if it is supported by substantial and competent evidence." *Griffiths v. Griffiths*, 167 Idaho 287, 296, 469 P.3d 615, 624 (2020). "Substantial evidence does not mean uncontradicted evidence," but instead, "is relevant evidence that a reasonable mind might accept to support a conclusion." *Hurtado v. Land O'Lakes*, Inc., 153 Idaho 13, 17, 278 P.3d 415, 419 (2012). "The trial court, not this Court on appeal, resolves the conflicting evidence and determines the weight, credibility, and inferences to be drawn from the evidence." *Griffiths*, 167 Idaho at 296, 469 P.3d at 624.

The magistrate court valued the items after receiving evidence from both parties during the trial. Brandi takes issue with the magistrate court's credibility determinations and faults the magistrate for finding Brandon's evidence more credible. Regarding the diamond bracelet, the designer purses, and the Rolex watch, the magistrate court's decisions were based primarily on values that Brandi provided during discovery. At trial, she testified to different values. The magistrate court considered all the evidence supporting the values it assigned to these items. We decline Brandi's invitation to reweigh the evidence in this matter and affirm the district court's

16

order on these items because substantial and competent evidence supports the magistrate court's determinations.

Regarding the valuation of the guns, Brandi argues the magistrate court erred when it relied on the expert testimony that Brandon presented. It is within the trial court's discretion to assess the credibility of expert witnesses. *City of McCall v. Seubert*, 142 Idaho 580, 585, 130 P.3d 1118, 1123 (2006). While Brandi argues that Brandon's expert witness provided a flawed valuation of the guns, she failed to offer any competing evidence to support a different valuation. The magistrate court assessed the credibility of Brandon's expert witness and deemed him credible. Brandi again asks this Court to conduct its own credibility determination, which we will not do. The magistrate court detailed substantial and competent evidence to support its decision. We affirm the district court's decision affirming the magistrate court's valuation of the guns.

Finally, Brandi takes issue with the valuation of household furniture she purchased after the parties separated because she had returned some of the furniture. Brandon valued the furniture at $21,800, based on credit card statements related to the furniture purchases. The magistrate court assigned that value to the furniture. Although Brandi argues that this value does not include the refunds received for the returned furniture, Brandi failed to introduce evidence establishing the refunds received. The magistrate court's value was based on substantial and competent evidence. As such, we affirm the district court's decision affirming the magistrate court's valuation of the furniture.

## G. The district court erred when it failed to vacate the award of attorney fees to Brandon for his contempt motions, but did not err when it affirmed the magistrate court's other deductions from Brandi's separate property award.

Following the court trial, the magistrate court ordered a deduction of $66,448.91 from Brandi's community property award to reimburse Brandon for a variety of items he paid on Brandi's behalf during the pendency of the divorce. This amount included reimbursement for a prior distribution of community property to assist each party with paying their attorney fees related to the divorce, which we addressed earlier in this opinion. The deduction also included an award of attorney fees to Brandon in connection with three contempt motions, additional attorney fees that Brandon paid on Brandi's behalf, and amounts Brandi improperly removed from Brandon's separate property bank account. The remainder of the deductions related to Brandi's excessive credit card charges during the pendency of the divorce. The district court

17

affirmed the magistrate court's order deducting $66,448.91 from Brandi's community property award.

Brandi argues that the magistrate court's decision to deduct $66,448.91 from her separate property award was not supported by substantial and competent evidence. However, Brandi focuses her argument on the award of attorney fees to Brandon for the contempt motions and the deduction for excessive credit card use. While Brandi mentions the remaining amounts in passing, she fails to articulate arguments regarding how the magistrate erred in ordering her to reimburse Brandon for the other charges and has thereby waived argument on those deductions. *See Neustadt*, 167 Idaho at 224, 469 P.3d at 11. Accordingly, we turn to Brandi's remaining arguments.

1. <u>Brandon concedes that the award of attorney fees related to the contempt motions should be reversed.</u>

Brandon filed three motions for contempt against Brandi, and Brandi filed one motion for contempt against Brandon. Following the April 2018 trial, the magistrate found Brandi in criminal contempt as alleged in Brandon's motions but did not find Brandon in contempt as alleged in Brandi's motion. The magistrate court awarded Brandon $4,675 in attorney fees relating to the four contempt motions, to be paid from Brandi's community property award. The district court vacated the magistrate court's decision finding Brandi in contempt and affirmed the magistrate court's decision declining to find Brandon in contempt. The district court did not expressly vacate the award of attorney fees to Brandon.

Brandi argues that the order awarding attorney fees to Brandon should be reversed and since Brandi is now the prevailing party on Brandon's motions, she is entitled to an award of attorney fees. Brandon concedes that the order awarding attorney fees to him should be reversed but maintains that he should still be awarded attorney fees for his successful defense against Brandi's contempt motion.

The parties have not appealed the district court's decision vacating the magistrate court's decision finding Brandi in contempt. Further the parties agree that this Court should vacate the magistrate court's award of attorney fees to Brandon for the motions. We therefore affirm the district court's decision vacating the magistrate court's decision finding Brandi in contempt, vacate the magistrate court's award of attorney fees to Brandon for the contempt motions, and remand the issue for the magistrate court to consider the parties' attorney fee requests related to the contempt motions.

18

2. The magistrate court's order requiring Brandi to reimburse Brandon for excessive credit card use was supported by substantial and competent evidence.

Early in the divorce proceedings, pursuant to the parties' stipulation, the magistrate court ordered Brandon to pay Brandi's credit card for her reasonable living expenses. Approximately four months later, Brandon filed a request for a modified temporary order and requested the magistrate court to order Brandi to cease using Brandon's credit cards because she was incurring an excessive amount of charges. The magistrate court found that over a five-month period Brandi had incurred charges on one credit card in the amount of $61,666.48, charges on a second credit card in the amount of $26,826.19, and charges on a third credit card in the amount of $13,460.15. The magistrate court found that Brandi had incurred excessive credit card charges beyond the amount required for a reasonable standard of living and ordered Brandi to reimburse Brandon $28,469.61.

When the separate funds of one spouse are used to the benefit of the community, "the separate estate is entitled to reimbursement of the amount expended, absent clear and convincing evidence that a gift of the separate funds was made or intended." *Ustick v. Ustick*, 104 Idaho 215, 222, 657 P.2d 1083, 1090 (Ct. App. 1983). Additionally, section 6.01 of the PNA states,

> Any debt incurred by Brandi shall be her separate obligation and not a community debt unless Brandon signs a debt instrument or a written document agreeing that any debt is a community debt of Brandon and Brandi.

The magistrate court's decision ordering Brandi to reimburse Brandon is supported by substantial and competent evidence, including the PNA, Brandi's interrogatory responses, Brandon's credit card statements and bank statements, and expert testimony concerning the source of funds that Brandon used to pay Brandi's credit card bills. Brandi has failed to dispute this evidence. Instead, Brandi again invites this Court to substitute our own credibility determinations and factual findings for those of the magistrate court. We decline to do so.

For these reasons discussed herein, we reverse that portion of the district court's decision affirming the magistrate court's award to Brandon of $4,675 in attorney fees. We affirm the remainder of the district court's decision affirming the magistrate court's decision to deduct $61,773.91 from Brandi's property award.

**H. The district court did not err when it affirmed the magistrate court's decision reimbursing Brandon for the taxes he paid in 2015, 2016, and 2017.**

On November 27, 2017, Brandon filed a motion to access community retirement accounts to pay quarterly tax payments. The magistrate court granted Brandon's motion and authorized

19

him to withdraw $119,730 from the retirement accounts to pay the January 15, 2018, quarterly tax payment. The magistrate court did not require Brandon to reimburse the community for the quarterly tax payment. Further, the magistrate court ordered the community to reimburse Brandon $38,177 for payments he made for community taxes for 2015 and 2016. The district court affirmed these decisions.

Brandi argues that the magistrate erred in ordering the community to reimburse Brandon for the 2015 and 2016 tax payments because the payments were intended as a gift; therefore, he is not entitled to reimbursement. Brandi also argues that the magistrate court erred in adopting Brandon's expert's calculations on the $38,177 community tax payment. Additionally, Brandi argues that Brandon's withdrawal of $119,117 from the community retirement account was not used to pay any tax debt and instead there was a tax refund that was never given to the community. Brandon argues the magistrate court did not err in relying on his expert's testimony and that Brandi never presented evidence that the tax payment was a gift.

1.  <u>Brandi waived her argument that the community was entitled to an "offset" for the funds that Brandon withdrew from a community account to pay income taxes in 2018.</u>

Brandi argues that the $119,117 that Brandon withdrew from a community account to pay taxes was not used to pay taxes. Brandi asserts, "there was a $224,311 overpayment of federal taxes and $51,747 was owed on the state taxes, resulting in a net refundable amount of $172,564.00, which credit was not part of the property division in this case." Brandon argues that the community was not entitled to any reimbursement for the 2017 tax payment under section 6.03 of the PNA.

We conclude that Brandi has waived this issue on appeal because she has not provided sufficient support for this Court to review it. We will not consider issues that lack "citations to the record, citations of applicable authority, or comprehensible argument." *Bach v. Bagley*, 148 Idaho 784, 791, 229 P.3d 1146, 1153 (2010). In support of her argument, Brandi cites to a fifty-page span of tax documents in the record. This Court will not search the record for the pages which Brandi intended to rely on. *Id.* Given Brandi's failure to cite evidence in the record supporting her contentions, we decline to address this issue.

20

2.     The magistrate court properly relied on Brandon's expert witness for reimbursement calculations regarding Brandon's 2015 and 2016 tax payments.

When the separate funds of one spouse are used to the benefit of the community, "the separate estate is entitled to reimbursement of the amount expended, absent clear and convincing evidence that a gift of the separate funds was made or intended." *Ustick*, 104 Idaho at 222, 657 P.2d at 1090. Brandi first argues that Brandon's payment of the 2015 and 2016 community taxes was intended as a gift; therefore, he is not entitled to reimbursement.

It was Brandi's burden to demonstrate that Brandon intended the payment to be a gift. *See Ustick*, 104 Idaho at 222, 657 P.2d at 1090. Brandi cites no evidence in the record demonstrating that Brandon intended the tax payments to constitute a gift to the community. As such, we conclude that Brandi waived this issue on appeal. *Bach*, 148 Idaho at 791, 229 P.3d at 1153.

Next, we conclude the magistrate court's decision ordering the community to reimburse Brandon for $38,177 is based on substantial and competent evidence. Both Brandi and Brandon provided experts to trace the source of the funds used to pay the taxes. The magistrate court adopted Brandon's expert's calculations in its findings of fact and conclusions of law. Brandi contends the magistrate court erred when it failed to give more weight to her expert's testimony. The magistrate court has the discretion to weigh the evidence and judge the credibility of the witnesses. *Seubert*, 142 Idaho at 585, 130 P.3d at 1123. The magistrate court was not required to agree with Brandi's expert. Brandi merely invites this Court to conduct our own evaluation of the witnesses and evidence. Once again, we decline to do so. Because substantial and competent evidence supports the magistrate court's order that the community reimburse Brandon $38,177, we conclude that the district court did not err in affirming this conclusion.

## I. The district court did not err when it affirmed the magistrate court's decision that the Mountain View Hospital shares are Brandon's separate property.

During the marriage, Brandon obtained 30 shares in Mountain View Hospital ("MVH"). The shares are now held by Virtucon, LLC, a company owned by Brandon. The shares cost $259,021.76. Brandon acquired the shares by borrowing $250,000 from D.L. Evans bank and paying the balance with a distribution of profits from INS. Brandon signed a promissory note with D.L. Evans for the $250,000 loan. Brandi did not sign the promissory note. The testimony at trial established that D.L. Evans bank only considered Brandon's cash flow in determining

21

whether to make the loan and the bank only looked to Brandon to repay the loan. The loan was also secured by a deed of trust on Brandon's separate property home. The deed of trust stated:

> Brandi Leigh Davis, wife of Brandon Kelly, shall have no personal liability to obligations herein or secured hereby, and executes this instrument only to subordinate any interest she may acquire, including without reservation her homestead rights to this Deed of Trust.

Following the court trial, the magistrate court determined the shares were Brandon's separate property because they were purchased almost entirely with separate property. Section 2.01(f) of the PNA provides that property purchased with separate property remains separate property. The magistrate court determined the INS distribution was Brandon's separate property, and separate property funds were used to pay all but $24,584.05 of the D.L. Evans loan. Regarding the community funds used to pay off the loan, the magistrate court determined that section 6.03 of the PNA permitted Brandon to use community funds to make payments on the loan and that Brandi agreed that neither she nor the community would have a claim for reimbursement for such payments. The magistrate court declined to value the MVH shares because they were Brandon's separate property. The district court affirmed the magistrate court's decision.

Brandi argues that the magistrate court's decision is not supported by substantial and competent evidence because Brandon's expert witness, David Smith, gave improper testimony and used improper tracing methods to determine the source of the funds that Brandon used to purchase the Mountain View Hospital ("MVH") shares. Brandi also contends that the proceeds from the D.L. Evans loan were community property. Brandon argues that the magistrate court properly accepted Smith's testimony and that the MVH shares are his separate property because he used separate property to purchase them.

1. The magistrate court properly relied on Smith's testimony.

Expert testimony is "admissible when the expert is a qualified expert in the field, the evidence will be of assistance to the trier of fact, and experts in the particular field would reasonably rely upon the same type of facts relied upon by the expert in forming his opinion." *Secol v. Fall River Med., P.L.L.C.*, 168 Idaho 339, 351, 483 P.3d 396, 408 (2021) (internal quotations omitted). "Bank statements, deposit slips, checks, tax returns, and the testimony and reports of accountants summarizing the parties' financial transactions during the marriage are appropriate sources of accounting evidence for tracing property acquired during marriage to

community and/or separate sources." *Batra v. Batra*, 135 Idaho 388, 396, 17 P.3d 889, 897 (Ct. App. 2001).

While Brandi argues that part of Smith's testimony "was improper, especially in light of the subject matter to which he testified along with his lack of qualifications," she fails to articulate why his tracing methods were improper or how his qualifications were lacking. Further, she fails to cite to any legal support for her contentions. Additionally, Brandi fails to cite us to the pages in the record that she alleges contain improper testimony. Brandi has waived this issue on appeal due to her failure to cite legal or factual support for her arguments. *Neustadt*, 167 Idaho at 224, 469 P.3d at 11.

2. The district court properly affirmed the magistrate court's finding that the MVH shares were Brandon's separate property.

Brandi asserts the magistrate court relied on "mischaracterizations of the laws (sic) and facts" to conclude that the MVH shares were Brandon's separate property. However, Brandi fails to support her argument with citations to the record. Brandon responds that the district court properly affirmed the magistrate's determination because the magistrate court relied on substantial and competent evidence in the form of Smith's expert testimony, and the MVH shares were purchased with loan proceeds secured by Brandon's separate property.

When determining the nature of the MVH shares, the magistrate court relied on: (1) the physical loan documents and the deed of trust, which showed that only Brandon signed the promissory note, Brandi was expressly released from any liability or obligation to repay the loan, and that Brandon's separate property home was used as collateral to secure the loan; (2) testimony from a D.L. Evans employee, who explained that the bank was only looking to Brandon to repay the loan and only considered Brandon's cash flow in granting the loan; and (3) testimony from Smith, who determined that most of the funds used to pay back the loan were Brandon's separate property. Brandi asks this Court to reweigh the evidence and ignore the PNA provisions that the magistrate court relied on in its decision. We decline to do so and find that substantial and competent evidence supports the magistrate court's decision. Therefore, we affirm the district court's decision affirming the magistrate court's determination that the MVH shares are Brandon's separate property.

Brandi also argues that the magistrate court erred in not valuing the MVH shares. Because we affirm the decision that the MVH shares were Brandon's separate property, we similarly affirm the decision not to value the shares because there was no need to do so.

23

3. The distributions from the MVH shares are separate property.

Brandi argues that the distributions from the MVH shares were community property. Brandon argues that Brandi waived her argument regarding the distributions from the shares because she offers no cogent argumentation. If the issue is preserved, Brandon argues that pursuant to section 2.01(g) of the PNA, distributions received on separate property remain separate property.

We conclude that Brandi has preserved this argument on appeal. Brandi's only argument on this point is that the magistrate court erred when it failed to deem the distributions community property pursuant to sections 2.04(a), (d), (f), (g) and (i) of the PNA. After reviewing the PNA, we agree that the distributions from the shares are Brandon's separate property pursuant to section 2.01(g) of the PNA, which provides that, "all rents, profits, issues, interest, royalties, and cash or stock dividends which may from time to time accrue or be paid on his Separate Property" are Brandon's separate property.

**J. The district court's remand of the child support issues is sufficient as written.**

Following the court trial, the magistrate court explained that it "will calculate the base child support amount owed, on the first $300,000 of combined income." Because the combined income of the parties exceeded $300,000, the magistrate court applied Idaho Rule of Family Law Procedure 126(J)(4):[1],

> (4) Income over $300,000. The guideline income schedules are not a limitation on the award of child support for combined Guidelines Income above $300,000 per year. The support based on the first $300,000 shall be calculated by these Guidelines in proportion to the relative incomes of the parents. In determining any additional support for Guidelines Income above $300,000, the court shall consider all relevant factors, which may include:
>
> > a. The financial resources of the child.
> >
> > b. The financial resources, need, and obligation of both parents, consistent with Section F.1.c.
> >
> > c. The standard of living the child enjoyed during the marriage.
> >
> > d. The physical and emotional condition and needs of the child, including educational needs.
> >
> > e. Any special impairment, limitation or disability of the child and any need for special education.

---

[1] The Idaho Child Support Guidelines have since been amended and this rule is now I.R.F.L.P. 120.

f. Any special ability or talent of the child and the cost of education or training for that ability or talent.

g. Any special living conditions that create additional costs for the child.

It appears that after considering the above factors, the magistrate court determined that there was no need to award <u>any</u> additional child support because it ordered Brandon to pay for all medical, educational, day care, and necessary living accommodations for the child. The magistrate court's findings and reasoning supporting this decision are sparse. The record is not entirely clear why the magistrate court changed its mind and ultimately decided not to award any additional child support beyond the expenses it ordered Brandon to incur.

The magistrate court never determined the dollar amount of support that the ICSG would require. The district court reversed and remanded the magistrate court's child support order because of this failure. The district court explained, "[i]n failing to follow this requirement, the Court finds that the Magistrate acted outside the boundaries of his discretion when he deviated from the ICSGs."

Brandi argues that the district court erred because it should have "remanded the case to the trial court to enter a child support order in full compliance with the Idaho Child Support Guidelines." Brandon argues that Brandi's request is inappropriate because the magistrate should exercise its discretion on remand and determine whether child support should be set pursuant to the ICSG.

Brandi's request that this Court essentially require the magistrate court to order child support based on the entirety of Brandon's income is inappropriate. Upon determination that a trial court has abused its discretion, "the appellate remedy ordinarily is not to usurp the judge's authority by exercising such discretion ourselves." *H2O Envtl., Inc. v. Farm Supply Distribs., Inc.*, 164 Idaho 295, 300, 429 P.3d 183, 188 (2018) (citation omitted). We interpret the district court's order to permit the magistrate court to fully exercise its discretion on remand.

### K. We decline to award attorney fees to Brandi, but award Brandon attorney fees on certain claims.

In her opening brief on appeal Brandi requests attorney fees and costs on appeal pursuant to Idaho Code sections 32-704 and 32-705 and Idaho Appellate Rule 41, contending that Brandon's arguments on appeal are frivolous and that we should remand this case with instructions to the magistrate court to consider any request for attorney fees without regard to the PNA. Idaho Code sections 32-704 and 32-705 allow the award of attorney fees, after considering

25

the financial resources of both parties, for "maintaining or defending any proceeding under this act." I.C. § 32-704(3). "It is the policy of this court ... to leave the award of attorney fees [under I.C. § 32–704] to the trial court, 'and to exercise its original jurisdiction only upon a showing that such action is necessary to the exercise of its appellate jurisdiction." *Stewart v. Stewart*, 143 Idaho 673, 681, 152 P.3d 544, 552 (2007) (internal quotations omitted). Because Brandi has not argued that an award pursuant to Idaho Code section 32-704 is essential to the exercise of appellate jurisdiction, we will leave it to the magistrate court on remand to consider any request that Brandi may make for an award of attorney fees, including attorney fees for issues raised on appeal, under Idaho Code section 32-704. *Id.*

However, as discussed above, section 8.01 of the PNA forecloses the award of attorney fees for matters related to divorce proceedings. Much of Brandi's appeal concerns issues related to property division and therefore, and to the extent Brandon raises the PNA as a bar to attorney fees Brandi would not be entitled to an allowance of attorney fees on those issues. Nevertheless, for the reasons previously discussed herein, the PNA would not bar attorney fees on appeal for those issues related to child custody, visitation, or support.

We also note that in her reply brief on appeal, Brandi also requested an award of attorney fees on appeal pursuant to Idaho Code sections 12-121 and 12-123. "In order to be entitled to attorney fees on appeal, authority and argument establishing a right to fees must be presented in the first brief filed by a party with this Court." *Smith By & Through Smith v. Treasure Valley Seed Co., LLC*, 164 Idaho 654, 659, 434; *see also* I.A.R. 41. Brandi did not assert either of these statutes in her opening brief and we therefore will not consider them on appeal.

Brandon requests attorney fees on appeal pursuant to Idaho Code section 12-121, arguing that Brandi has essentially just invited the Court to second-guess the trial court's discretionary decisions on conflicting evidence and that Brandi failed to demonstrate that the magistrate court misapplied the law. Additionally, Brandon seeks attorney fees pursuant to paragraph 13 of the PNA because Brandi has challenged the validity of the PNA throughout this appeal, forcing Brandon to defend the PNA. Brandi opposes the request on the bases that Brandon is not a prevailing party, she raises issues of first impression, and that she does not challenge the "validity" of the PNA, but rather its "enforceability." Notably, Brandi does not argue that section 8.01 of the PNA bars Brandon from seeking an award of attorney fees on appeal.

We first note that Brandi has not asserted that section 8.01 of the PNA should bar Brandon from requesting attorney fees on appeal pursuant to section 12-121. As we have said repeatedly throughout this opinion, this Court will not consider issues on appeal that are not supported by argument and authority in the opening brief. *Neustadt*, 167 Idaho at 224, 469 P.3d at 11. The same is true of the failure to raise an issue at all. As a result, we do not consider whether the PNA would bar Brandon's request.

Turning to the merits of Brandon's request, attorney fees may be awarded to a prevailing party under section 12-121 if the Court believes that the proceeding was brought, pursued, or defended frivolously, unreasonably or without foundation. *Hardy v. Phelps*, 165 Idaho 137, 147, 443 P.3d 151, 161 (2019). When awarding fees under section 12-121, "[a]pportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation." *Baughman v. Wells Fargo Bank, N.A.*, 162 Idaho 174, 183, 395 P.3d 393, 402 (2017). When an issue is one of first impression, it is not considered frivolous, unreasonable, and without foundation. *See Id.* If, however, the appeal merely invites this Court to second guess the findings of a lower court without providing any new argument or authority demonstrating how the lower court erred, section 12-121 allows the award of attorney fees.

We conclude that Brandi raised multiple issues that were not properly preserved below; were waived because she failed to properly support them with argument, authority or citations to the record; and that failed to provide any new argument or authority explaining how the lower court erred and therefore merely invited this Court to second guess the lower court's findings. While Brandi prevailed on two issues on appeal, this does not absolve her of responsibility for raising multiple issues that were frivolous, unreasonable and without foundation. We recognize that Brandi raised an issue of first impression regarding the enforceability of PNA provisions barring attorney fees for child custody, visitation and support and therefore we do not award Brandon fees on that claim. None of Brandi's remaining claims, however, are issues of first impression. We further determine that Brandon is the prevailing party on those issues for which we award fees. We therefore award Brandon attorney fees pursuant to section 12-121 for the following issues:

- Section IV.C, concerning access to community property to pay attorney fees
- Section IV.E, concerning Brandon's interest in Weyland-Yutani, LLC
- Section IV.F, concerning the award and valuation of items of community property

27

- Section IV.G.2, concerning deductions from her community property award for excessive credit card use

- Section IV.H, concerning community reimbursement to Brandon for taxes paid

- Section IV.I, concerning the shares in Mountain View Hospital

Finally, pursuant to the PNA, Brandon is entitled to attorney fees and costs for the narrow issue of Brandi's argument that the PNA was invalid, which we discussed in section IV.A of this opinion. Section 13 of the PNA provides:

> If either party challenges the validity of this Agreement or any portion hereof, the prevailing party shall be entitled to be reimbursed by the other party for all costs and expenses incurred in any action, including, but not limited to, reasonable attorney fees and costs for the services rendered to such party regardless of whether or not the litigation is actually instituted.

Brandi's argument that she was not challenging the validity of the PNA but rather its enforceability is unavailing. While she may have worded her challenge in terms of enforceability, her attack was on the validity of the agreement as it applied to the definitions of separate and community property. The award of attorney fees under this section is mandatory and we conclude that Brandon was the prevailing party on this issue. This provision does not authorize the award of attorney fees for the remaining issues raised on appeal.

## VI. CONCLUSION

For the reasons stated above, we affirm in part and reverse in part the district court's intermediate appellate decision as follows:

1. <u>Affirm</u> the district court's decision that the PNA is valid and enforceable.

2. <u>Reverse</u> the district court's decision affirming the magistrate court's determination that the PNA prohibits the award of attorney fees for issues relating to child custody, visitation and support and <u>hold</u> as a matter of law that such provisions violate public policy.

3. <u>Reverse</u> the district court's decision affirming the magistrate court's determination that the EIRMC payments are Brandon's separate property and direct the magistrate court to <u>enter summary judgment in favor of Brandi</u> on this issue.

4. <u>Affirm</u> the district court's decision affirming the magistrate court's determination that the interest in Weyland-Yutani, LLC is Brandon's separate property.

5. <u>Affirm</u> the district court's decision affirming the magistrate court's determination that the Mountain View Hospital shares are Brandon's separate property.

6. <u>Affirm</u> the district court's decision affirming the magistrate court's determinations related to the diamond bracelet, purses, Rolex watch, guns, and furniture.

7. <u>Affirm</u> the district court's decision vacating the magistrate court's order finding Brandi in contempt, <u>vacate</u> the magistrate court's award of attorney fees to Brandon for the contempt motions, and <u>remand</u> the issue for the magistrate court to determine the appropriate amount of attorney fees to award, if any.

8. <u>Affirm</u> the district court's decision affirming the magistrate court's deduction of $61,773.91 from Brandi's property award.

9. <u>Affirm</u> the district court's decision affirming the magistrate court's decisions: (a) that the community was not entitled to any reimbursement for Brandon's withdrawal of $119,730 to pay the 2017 taxes; and (b) that Brandon was entitled to reimbursement in the amount of $38,177 for the 2015 and 2016 taxes he paid with separate funds.

10. <u>Deny</u> Brandi's request for an award of attorney fees pursuant to Idaho Code sections 32-704 and 32-705, but Brandi may renew her request before the magistrate court on remand.

11. <u>Grant</u> Brandon's request for an award of attorney fees on the issues identified above, pursuant to Idaho Code section 12-121, and <u>grant</u> Brandon's request for attorney fees pursuant to the PNA for Brandi's argument that the PNA was invalid.

Because both parties prevailed in part neither is a prevailing party for purposes of I.A.R. 41. As a result, neither party is awarded costs on appeal.

Chief Justice BEVAN and Justices BRODY, STEGNER, and MOELLER **CONCUR**.

29